Joseph **BAGROWSKI, Jr.**

v.

**MARYLAND PORT AUTHORITY, et al.**

No. JFM–90–3007.

United States District Court, D. Md.

Feb. 18, 1994.

J. Richard Moore, III, Miller, Olszewski & Moore, Bel Air, MD, for plaintiff.

Donald A. Krach, Lawrence Paul Fletcher–Hill, Office of Atty. Gen., Baltimore, MD, for defendants.

## MEMORANDUM

MOTZ, District Judge.

The Plaintiffs in this case are seven officers with the Maryland Port Administration Police Department ("MPAPD").[1] They al-

---

1. Fifty-seven officers originally sued as plaintiffs. The claims of seventeen were dismissed in the course of discovery and an additional thirty-three subsequently settled their claims. Of the seven remaining plaintiffs, six are active MPAPD officers. They are Joseph Bagrowski, Jr., Margaret

lege that the Maryland Port Administration ("MPA") and other public officials (collectively "Defendants") violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.* by failing to adequately compensate them for hours worked between 1987 and 1990. Discovery has been completed, and the parties have filed cross-motions for summary judgment. The primary issue presented is whether plaintiffs were entitled to compensation during their lunch break.

## I.

### A.

The MPAPD provides protective services within the confines of MPA facilities, including the World Trade Center, the Dundalk Marine Terminal, the Seagirt Marine Terminal, and the port Masonville, Hawkins Point and Cambridge. The officers' duties range from patrolling MPA property and monitoring visitor and vehicle traffic to investigating crimes committed on MPA property and making related arrests. Except in special circumstances, the officers' jurisdiction is limited to the facilities' geographical boundaries.

Plaintiffs, as MPAPD officers, were assigned to one of four basic work shifts spanning each 24–hour period. Shifts included a thirty-minute meal period. Officers were required to notify their supervisors when they began the lunch break and provide a means to contact them during that time (usually by radio). Except for those assigned to the World Trade Center, officers were free to leave MPA premises to get food, eat and/or run errands during the thirty minutes. World Trade Center officers could leave the premises to buy food but had to eat it in the building. MPAPD allowed the officers personal, off-premises use of their assigned police vehicles during meal time.

### B.

The FLSA and regulations promulgated thereunder provide that law enforcement personnel must receive overtime pay at the rate of one and a half times their usual wages if they work in excess of 171 hours within a work period of 28 consecutive days. 29 U.S.C. § 207(b)(i); 29 C.F.R. § 553.230(b). MPAPD officers work (and at all times relevant to this case worked) 20 days in a 28–day period. Prior to September 5, 1990, shifts were eight hours in length and were preceded by a fifteen minute roll call. Defendants admit that the roll call constituted compensable time. *See* 29 C.F.R. § 553.221(b). After September 5, 1990, shifts were lengthened to eight and a half hours but roll call was included within them. Therefore, if defendants are correct that the officers were not working during lunch, plaintiffs worked 7.75 hours each day (8 hours + .25 hours − .50 hours) or 155 hours (7.75 hours × 20 days) every 28 days prior to September 5, 1990 and were well within the 171 hour FLSA limit. Similarly, if defendants' position is correct, they were in compliance with the FLSA after September 5, 1990 since MPAPD officers worked only 160 hours (8 hours × 20 days) every 28 days.

## II.

■ Labor Department regulations define "bona fide" meal periods as non-compensable, non-working time:

(a) *Bona fide meal periods.* Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating.

(b) *Where no permission to leave premises.* It is not necessary that an employee be permitted to leave the premises if he is

Dietrich, Susan C. Matthew, Warren T. Roth, Ronald Tate and William J. Zacierka. The seventh, Mary Callanan, retired effective June 30, 1991.

otherwise completely freed from duties during the meal period.

29 C.F.R. § 785.19.

Until recently, courts interpreting this regulation chose from two related standards: the "predominant benefit test", assessing whether the employee's meal time is spent primarily for the employer's benefit, *see Kohlheim v. Glynn Co.,* 915 F.2d 1473, 1477 (11th Cir.1990) (firefighters' meal periods compensable); *Burgess v. Catawba, Co.,* 805 F.Supp. 341, 346–47 (W.D.N.C.1992) (emergency medical service (EMS) personnel mealtime compensable); *Wahl v. City of Wichita, Kan.,* 725 F.Supp. 1133, 1144 (D.Kan.1989) ("What matters in meal period cases is whether the employee is subject to real limitations on his personal freedom which inure to the benefit of his employer"; or 2) the "completely relieved of duty" standard, focusing on whether an employee is indeed *completely* free of any work-related tasks, *see Wahl,* 725 F.Supp. 1133, 1143 (police officers' meal periods' compensable) and *Nixon v. City Junction City, Kan.,* 707 F.Supp. 473 (D.Kan.1988) (same). *See also Hill v. U.S.,* 751 F.2d 810, 814 (6th Cir.1984) (letter carriers not required to perform "substantial duties" during lunch period therefore meal periods not compensable).

A new standard, recently adopted in several circuits, looks at whether plaintiffs are "primarily engaged in work-related duties" during their meal breaks. *Lamon v. City of Shawnee, Kan.,* 972 F.2d 1145, 1157 (10th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1414, 122 L.Ed.2d 785 (1993).[2] In *Lamon,* the Tenth Circuit rejected the lower court's jury instruction that "the performance of *any* official duty, no matter how insignificant, during meal periods rendered the time compensable." *Lamon,* 972 F.2d at 1158.[3] In clarifying the new test, *Lamon* states:

[A] police officer must primarily be engaged in work-related duties during meal periods to warrant compensation therefor. That a police officer is on-call and has some limited responsibilities during meal periods does not perforce mean the officer is working. . . . If during meal periods a police officer's time and attention are primarily occupied by a private pursuit, presumably the procurement and consumption of food, then the officer is completely relieved from duty and is not entitled to compensation under FLSA. Conversely a police officer is entitled to compensation for meal periods if the officer's time or attention is taken up principally by official responsibilities that prevent the officer from comfortably and adequately passing the mealtime.

*Id.* at 1157–58 (citations omitted). *See e.g. Alexander v. City of Chicago,* 994 F.2d 333, 337 (7th Cir.1993) (adopting *Lamon* standard); *Armitage v. City of Emporia, Kan.,* 982 F.2d 430, 432 (10th Cir.1992) (trial court reliance on *Nixon/Wahl* "completely relieved of duty" standard erroneous); *Lee v. Coahoma Co., Mississippi,* 937 F.2d 220, 225 (5th Cir.1991) (affirming non-compensability of deputy sheriffs' meal periods where being on-call in event of emergency did not constitute being on-duty), *modified on other grounds,* 986 F.2d 100 (5th Cir.1993); *Brinkman v. Department of Corrections of the State of Kansas,* 804 F.Supp. 163, 169 (D.Kan.1992). These courts have abandoned the notion that any work-related activity, such as being on-call, automatically renders a meal break less than bona fide.

In the instant case plaintiffs had considerable flexibility and rarely received emergency calls during their lunch breaks. Except when stationed at the World Trade Center, they were even allowed to leave MPA prem-

---

**2.** The Tenth Circuit in *Lamon* specifically sought to reconcile the meaning of "completely relieved of duty" under 29 C.F.R. § 785.19(a), covering employees generally, with similar language in 29 C.F.R. § 553.223(b) governing state law enforcement personnel, including Plaintiffs. *Lamon,* 972 F.2d at 1157–58 & n. 18. *See also Lee v. Coahoma Co., Mississippi,* 937 F.2d 220, 225 (5th Cir.1991), *modified on other grounds,* 986 F.2d 100 (5th Cir.1993).

**3.** Remanding the case for a new trial, the appeals court did not decide whether the police officers' meal time tasks warranted compensation under the new standard.

ises and run personal errands in MPA vehicles.[4] By contrast, the firefighters and EMS personnel in *Kohlheim* and *Burgess* were not only subject to emergency calls during meals but took on "significant affirmative responsibilities" during breaks. *Kohlheim*, 915 F.2d at 1477; *Burgess*, 805 F.Supp. at 347. Unlike MPAPD officers, those personnel were subject to "real limitations on their freedom during mealtime" in actually responding to emergency calls. *Id.* Captain Gonzales cannot recall a single instance in his seventeen years with MPAPD where MPAPD has had to summon officers back from their meal break to respond to a work-related emergency. As officers with limited jurisdiction, plaintiffs were not even on duty during trips outside MPA property. Thus, they were of little benefit to MPA once they left the premises.

■ Although MPAPD supervisors kept tabs on the officers' whereabouts during meal breaks, this was done, in part, for the officers' own safety and convenience in order to locate them in a family or personal emergency. MPA had an additional interest in monitoring MPAPD equipment that officers carried with them on breaks. Being on-call in case of emergency, does not, in and of itself, make meal time, work time. *Lamon*, 972 F.2d at 1157–58; *Lee*, 937 F.2d at 225.

■ Plaintiffs further complain that occasional mail runs and citizen inquiries interfered with their meal periods and caused them "to eat on the run". These tasks did not constitute "substantial duties" nor were the officers' personal activities routinely interrupted by official responsibilities. *See City of University Park v. University Park Police Assoc.*, 766 S.W.2d 531 (Tex.Ct.App. 1989) (remaining in uniform, notifying dispatcher of break time, being subject to call, and fielding minor citizen inquiries did not make officers' meal time compensable).[5]

In sum, no reasonable fact-finder could find from the evidence that plaintiffs were primarily engaged in work-related activities while they were at lunch. Defendants are therefore entitled to the summary judgment which they seek on the issue. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## III.

Plaintiffs assert two additional subsidiary claims. First, they allege that they were deprived of compensation for post-shift work by virtue of a "rounding down" policy in effect prior to September 5, 1990 whereby officers required to work after the regular shift would not be paid if they stayed for 30 minutes or less. This policy stemmed from the fact that officers' time was recorded only in one hour segments and was abolished as of September 5, 1990 when their time began to be recorded in six-minute segments. Second, plaintiffs allege that they were required to do certain pre-roll call work for which they were not compensated.

---

**4.** The fact that officers must eat at the World Trade Center is not dispositive. If an employee is "completely freed from duties" during meal time, the meal period is bona fide even if he or she must remain on the premises. 29 C.F.R. § 785.19.

**5.** Plaintiff Susan Matthew states in an interrogatory answer that after she was assigned to the Communication Division in 1988, she was almost always interrupted during lunch by telephone calls, taking messages, answering radio calls and dispatching information. These assertions may create a genuine issue of fact concerning whether she was on duty during lunch. However, Matthew has presented no evidence that she was not properly compensated for post-shift time un-

der MPA's "rounding down" policy and she is not a supervisor entitled to assert a claim for pre-roll call work. *See infra*, section III. Thus, even if she had proved that she worked during her lunch break, she could not establish, as discussed *infra*, that by working 8.25 hours a day prior to September 5, 1990, or 8.5 hours per day thereafter, she was required to work more than the 171 FLSA limit. Indeed, given the absence of proof on the post-shift rounding down claim as to all plaintiffs, it is only plaintiffs Warren Roth and Mary Callanan (who, as supervisors, may assert a pre-roll call claim, *see infra*, section III B) who could withstand defendants' summary judgment motion assuming they had proved they worked during lunch.

## A.

■ Plaintiffs' first claim fails for several reasons. First, it is apparent that under a worst case scenario plaintiffs were not so damaged by MPA's "rounding down" policy that they became entitled to overtime under the FLSA. It is to be remembered that prior to September 5, 1990 (when this policy was in effect) MPAPD officers worked only 7.75 hours a day. Thus, assuming that plaintiffs worked 30 minutes that was not recorded after their shift was over they would have worked only 8.25 hours. If they did that every day for the 20 days that they worked in any 28 day period, they would have worked only 165 hours—well within the FLSA 171 hour limit.

Moreover, plaintiffs concede that the "rounding down" policy was mitigated in practice in two different ways: (1) it was mirrored by a "rounding up" policy whereby any officer working at least 31 minutes would be given a full hour's pay, and (2) if an officer was asked to stay after his shift on any given day for 30 minutes or less, the following day his supervisor would permit him to leave early by a like time. Having admitted these practices, plaintiffs have failed to present any evidence that the practices did not confer upon them a benefit of at least equal value to the rounding down policy of which they complain.

## B.

As indicated above, plaintiffs' second subsidiary claim is that they were denied compensation for certain alleged pre-roll call work. Plaintiffs assert this claim as to non-supervisory officers for the first time in their opposition to defendants' summary judgment motion. Discovery has long since closed, and it is far too late for plaintiffs to raise this claim now.[6]

■ Two of the plaintiffs—Warren Roth throughout the relevant period and Mary Callanan after November 1, 1989 when she was promoted to corporal—were supervisors and are entitled to maintain this claim. Although defendants have submitted affidavits contradicting the assertions made by Roth and Callanan that supervisors had to report 30 minutes prior to roll call, a genuine issue of fact exists as to that question. Nevertheless, Roth's and Callanan's claim fails for the first reason that the post-shift "rounding down" claim of all the plaintiffs fails. Even assuming that supervisors had to report 30 minutes before roll-call, prior to September 5, 1990 they still only worked 8.25 hours a day and after September 5, 1990 only 8.50 hours a day. This would have constituted, respectively, only 165 hours and 170 hours within a 28 day period—less than the 171 hours permitted by the FLSA.[7]

A separate order granting defendants' motion for summary judgment is being entered herewith.

---

**6.** In any event, the claim is wholly without merit. The only substantial pre-roll call activity in which the non-supervisory plaintiffs allegedly engaged was putting on their uniforms. Many officers came to work in their uniforms and nothing prevented plaintiffs from doing so. Clearly, dressing at work was not an "integral part of their activity" as were the clothes-changing and showering habits of the workers routinely exposed to hazardous chemicals at a chemical manufacturing plant who were the plaintiffs in *Steiner v. Mitchell,* 350 U.S. 247, 76 S.Ct. 330, 100 L.Ed. 267 (1956)—the only case cited by plaintiff.

**7.** I recognize, of course, that if Roth or Callanan in any given 28 day period had to both report 30 minutes prior to roll call and perform post-shift work, the 171 FLSA limit would have been exceeded. However, neither Roth nor Callanan have presented any evidence to prove that this occurred.