Glen A. LEE, et al., Plaintiffs,

v.

AM–PRO PROTECTIVE AGENCY, INC., Defendant.

Civ. A. No. 94–190–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Aug. 15, 1994.

Nils G. Peterson, Arlington, VA, for plaintiffs.

C. Torrence Armstrong, McGuire Woods Battle & Boothe, Alexandria, VA, for defendant.

## MEMORANDUM OPINION

BRINKEMA, District Judge.

This is a class action brought by over 300 current and former security guards against their employer, Defendant Am–Pro, under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.* At issue is Am–Pro's contract to provide uniformed security services in the Washington, D.C. metropolitan area for the United States Department of State. Under the Department of State contract, the security officers must be uniformed and armed. Plaintiffs seek compensation for the time that it takes them to change into and out of their guard uniforms, on site, because they are not allowed to change at home and arrive at work already in uniform. They also seek compensation for time spent drawing their equipment, but that is not the subject of this motion. Plaintiffs seek back pay, prejudgment interest and liquidated damages.

Defendant's Motion for Partial Summary Judgment concerns only the uniform claim. Thus, the issue before this Court is whether employer-required changing from street clothes into a security guard uniform is a principal employment activity, which should be compensated under the Fair Labor Standards Act (FLSA) or a "preliminary or post-

liminary" activity excluded from FLSA under the Portal to Portal Act, 29 U.S.C. § 254.

Am–Pro relies on the Portal-to-Portal Act of 1947, 61 Stat. 84, 29 U.S.C. § 254 (1988), which states in part that:

> [N]o employer shall be subject to any liability or punishment under the Fair Labor Standards Act of employee minimum wages, or to pay an employee overtime compensation, for or on account of any of the following activities of such employee . . .
>
> (2) activities which are preliminary or postliminary to said principal activity or activities, which occur either prior to the time of any particular workday at which employee commences, or subsequent to the time he ceases, such principal activity or activities.

29 U.S.C. § 254(a). The relevant federal regulation explicitly excludes changing clothes from an employee's "principal" duties. *See* 29 C.F.R. § 790.7(g).

However, the literal language of 29 C.F.R. § 790.7(g) has been tempered by the Supreme Court's ruling in *Steiner v. Mitchell,* 350 U.S. 247, 247–48, 76 S.Ct. 330, 331, 100 L.Ed. 267 (1956). In *Steiner,* the Court held that battery plant employees' changing time was compensable because the protective clothing involved was necessary to the safe performance of the employees' principal activity, working with sulfuric acid and other toxic chemicals, and thus, changing into protective clothing was "an integral and indispensable part" of that activity. *Id.* at 255, 76 S.Ct. at 335. Am–Pro distinguishes *Steiner* on the grounds that in that case, the protective clothing was necessary to protect the health and safety of battery plant employees, unlike the uniforms at issue in this action. Contrary to Am–Pro's reading, *Steiner* does not hold that changing clothes under "normal conditions"—whatever those may be—is a preliminary/postliminary activity.[1] Rather, *Steiner* stands for the more general proposition that activities workers perform before or

---

1. The Court merely narrowed its holdings to the facts of that case, stating that the issue of changing clothes "under normal conditions" was not involved, because the government had conceded

that changing and showering ordinarily constitute preliminary and postliminary activities. *Id.* at 249, 76 S.Ct. at 331.

after their regular shift are compensable if they are "an integral and indispensable part of the principal activities for which covered workmen are employed" and not specifically excluded by Section (4)(a)(1) of the Portal to Portal Act. *Id.*

Plaintiffs argue that the *Steiner* case is directly on point because safety concerns are the reason that they are not allowed to wear their uniforms outside of duty hours. According to Plaintiff Glen A. Lee, based on his twenty-two years of police experience, "it is an unsafe procedure for a police officer or a security officer to travel to work in uniform while unarmed because a person with a uniform on is generally considered an authority figure to anyone considering committing a crime, actually committing a crime, or who has committed a crime."

The issue of whether security guards, or other police or quasi-law enforcement officers must be compensated for time spent changing into official uniforms appears to be unresolved in this Circuit [2].

■ In *Steiner,* the Supreme Court relied upon an analysis of whether the activity in question was necessary for the principal work performed, and whether it was done for the benefit of the employer. *Steiner,* 350 U.S. at 251, 76 S.Ct. at 332. This has become the standard for determining whether activities are integral and indispensable. *See, e.g., Truslow v. Spotsylvania County Sheriff,* 783 F.Supp. 274 (E.D.Va.1992). Activities spent predominantly in the employees' own interests are preliminary or postliminary. *Id.* at 278, citing *Dunlop v. City Elec., Inc.,* 527 F.2d 394, 398 (5th Cir.1976). However, an activity is not deemed "preliminary or postliminary" and excluded from FLSA

merely because it takes place before or after the work shift. *Id.* at 277, citing *Steiner; Mitchell v. King Packing Co.,* 350 U.S. 260, 76 S.Ct. 337, 100 L.Ed. 282 (1956); and *Barrentine v. Arkansas–Best Freight Sys., Inc.,* 750 F.2d 47 (8th Cir.1984), *cert. denied,* 471 U.S. 1054, 105 S.Ct. 2116, 85 L.Ed.2d 480 (1985). Necessity to the principal activity and benefit to the employer are the two critical tests. *Id.* at 278.

■ The United States Claims Court in *Riggs v. United States,* 21 Cl.Ct. 664 (1990), noted some additional inquiries relevant to the issues of benefit and necessity. In *Riggs,* firefighters sought compensation for time spent attending roll call and transferring protective clothing from their lockers to their assigned vehicles or a roll call site. The Court concluded that "[b]ecause of the importance defendant attaches to having the protective clothing at roll call, because the clothing belongs to defendant, because of the critical nature of that clothing to plaintiffs' ability to do their work, and because it cannot be taken from the premises but must be stored in defendant's lockers" transferring clothing preshift and postshift were not merely preliminary or postliminary activities. *Id.* at 677. Each of these indicia of necessity for the work and benefit to the employer appear to be equally present in the record before this Court.

■ Summary judgment is only appropriate where no genuine issue of material fact is in dispute. See Rule 56, Fed.R.Civ.P.; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In deciding whether to grant summary judgment, all reasonable inferences must be drawn in favor of the non-moving

---

**2.** The District Court for the District of Maryland recently addressed this issue, but in a different posture. *Bagrowski v. Maryland Port Authority,* 845 F.Supp. 1116 (1994). The plaintiffs, Port Authority Police officers, were mainly concerned about compensation for their lunch breaks; they raised a claim for pre-roll call activities for the first time in their opposition to the defendants' motion for summary judgment. The Court held that it was then too late to raise the claim. However, the Court opined in a footnote that:

> In any event, the claim is wholly without merit. The only substantial pre-roll call activity in which the non-supervisory plaintiffs allegedly

engaged was putting on their uniforms. Many officers came to work in their uniforms and nothing prevented plaintiffs from doing so. Clearly, dressing at work was not an 'integral part of their activity' as were the clothes-changing and showering … in *Steiner v. Mitchell* …

*Id.* at 1121 n. 6.

Because the Court was not deciding the issue, note 6 is pure dicta. At any rate, the officers in *Bagrowski* were allowed to change at home, which is a significant factual difference from the undisputed facts in the instant case.

party. *See Pachaly v. City of Lynchburg,* 897 F.2d 723, 725 (4th Cir.1990).

Drawing all inferences in the light most favorable to the non-moving party, there is ample evidence in the record that would support a finding that being in uniform, and therefore, putting on the uniform, is an integral and indispensable part of the Am–Pro security guards' principal activity, because it is both done for the benefit of the employer, and is necessary to the performance of the guards' principal activity. *See Steiner,* 350 U.S. 247, 251, 76 S.Ct. 330, 332.

On the "benefit of the employer" factor, the plaintiffs have presented strong evidence that Am–Pro benefits from guards meticulously dressing themselves in the prescribed uniform. Am–Pro requires new guards to sign an agreement and solemnly swear to maintain their uniforms "at the highest level of care, maintenance and appearance", under pain of immediate termination. (attachment 4, filed under seal). They must also swear that they understand that "the appearance of an Am–Pro agent is of paramount importance." *Id.* Plaintiffs must appear in full uniform at guardmount, and lateness to guardmount is viewed very seriously and punishable by docking the late officer's pay. (Attachment 7).

On the necessity factor, there is also evidence that the security guard uniform is necessary to the performance of the guards' principal activity. Under the State Department's requirements, Am Pro has agreed to comply with detailed regulations regarding uniformed guards' personal grooming and appearance, including a fifteen-point specification governing the tailoring and proper wearing of the security guard uniform and its various accessories. (Attachment 5). This indicates that, in the State Department's view, the guards' correct appearance in uniform is a necessary aspect of Am–Pro's performance under the contract. Am–Pro also requires that uniformed guards be in full uniform to be issued a weapon and proceed to guardmount.

These facts in the instant case are almost identical to those of *Baylor v. United States,* 198 Ct.Cl. 331, 1972 WL 20798 (1972). In *Baylor,* the Court of Claims found that

changing into and out of uniforms at designated locker points and drawing weapons were "so integral to the performance of the principal activity that the situs of these activities [is] the place of performance, and the principal activity for which the employee was employed had begun." *Id.* at 337. The Court also found that the requirement that the security guards be "presentable-at-appearance-in-uniform" along with the requirement that they be armed, were "so much in the interest of the employer that the guards' performance of these functions were necessary to and directly connected with their duties as guards." *Id.* at 337–38. This Court agrees with this reasoning, and holds that there are sufficient facts showing the benefit to Am–Pro of plaintiffs wearing their uniforms, and their necessity to the work of uniformed guards, that defendant's Motion for Partial Summary Judgment on this issue must be DENIED.