**John V. ABENDSCHEIN, et al., Plaintiffs,**

v.

**MONTGOMERY COUNTY, MARYLAND, Defendant.**

No. CIV. A. AW–96–3392.

United States District Court, District of Maryland.

Nov. 4, 1997.

---

William W. Thompson, II, Michael S. Wolly, Lauren F. Singer, Washington, DC, for Plaintiffs.

Charles W. Thompson, Jr., County Atty., Joann Robertson, Chief, Litigation Division, Bruce P. Sherman, Senior Asst. County Atty., Sharon V. Burrell, Associate County Atty., Rockville, MD, for Defendant.

### MEMORANDUM OPINION

WILLIAMS, District Judge.

Plaintiffs commenced this action against Defendant alleging violation of the maximum

hours provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207. Presently before the Court are cross motions for summary judgment. No hearing is deemed necessary. Local Rule 105.6 (D.Md.). For the reasons set forth below, the Court will grant Plaintiffs' Motion for Summary Judgment as to liability, and will refer the issue of damages to a United States Magistrate Judge.

### Factual Background [1]

Each plaintiff is, or has at some time since January 1, 1993, been employed by Defendant as a corrections officer in a detention center in Rockville, Maryland. The detention center operates on a continuous, around-the-clock schedule. Most corrections officers are assigned to one of three eight and one-half hour shifts. Shift #1 begins at 10:30 P.M. and ends at 7:00 A.M. Shift #2 begins at 6:30 A.M. and ends at 3:00 P.M. Shift #3 begins at 2:30 P.M. and ends at 11:00 P.M. Corrections officers generally receive a thirty minute meal period during the middle hours of each shift. Approximately six to eight officers take their meal periods at a time. A staff dining room is available for the officers.

Most officers are required to wear their uniforms during their meal periods. Officers must request permission to go outside of the facility to smoke during their meal period, and also must receive permission to leave the facility's grounds. At all times during their meal periods, the officers are subject to being recalled to their posts to participate in inmate counts, inmate shakedowns, or to provide assistance to other officers. The parties dispute how often these interruptions occur. Most officers are not allowed to sleep or use the facility's gymnasium during the meal period.

Plaintiffs bring suit under § 207 of the FLSA. Under § 207(a)(1), an employee must receive at least one and one-half times his regular rate for all hours worked in excess of forty hours in a week. Plaintiffs' shifts are scheduled for eight hours of work per day, with an additional one-half hour per day for their meal periods. Generally, Plaintiffs are not compensated for the one-half hour meal periods. Plaintiffs claim that they are actually working during the meal periods, which would mean that they work more than forty hours per week and are entitled to overtime pay under the FLSA for the hours worked in excess of forty per week.

### Discussion

#### I. Summary Judgment

Summary judgment is appropriate when there is no genuine dispute of material fact and when the moving party is entitled to judgment as a matter of law. Fed.R.Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The evidence of the non-movant is to be believed and all justifiable inferences drawn in her favor, but a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *Runnebaum v. NationsBank of Md., N.A.*, 123 F.3d 156, 164 (4th Cir.1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir.1985)). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (citations omitted).

In determining whether genuine and material factual disputes exist, the Court has reviewed the parties' respective memoranda and the many exhibits attached thereto, construing all facts, and all reasonable inferences drawn therefrom, in the light most favorable to Defendant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986). Applying these principles to the record, the Court concludes that summary judgment as to liability must be granted in favor of Plaintiffs.

---

1. These facts are taken from Plaintiffs' First Requests for Admissions and Defendant's Response to Plaintiffs' First Requests for Admissions of Fact, and from Defendant's Cross–Motion for Summary Judgment.

## II. FLSA

The FLSA was enacted to provide workers with specific minimum protections against excessive work hours and substandard wages. *See Monahan v. County of Chesterfield, Va.,* 95 F.3d 1263, 1267 (4th Cir.1996). To accomplish this goal, the FLSA contains minimum wage and overtime requirements. *Id.* Section 207(a)(1) requires that an employee receive overtime pay of at least one and one-half times her regular rate for any hours worked in excess of forty in a week.[2] The Supreme Court made the FLSA applicable to state and municipal governments in *Garcia v. San Antonio Metro. Transit Auth.,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). *See Monahan,* 95 F.3d at 1267.

Although the FLSA only requires overtime compensation for hours actually worked, the statute itself does not provide a definition of "work." *See Reich v. Southern New England Telecomms. Corp.,* 121 F.3d 58, 64 (2d Cir.1997). The Supreme Court attempted to fill this gap, defining work as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123,* 321 U.S. 590, 598, 64 S.Ct. 698, 703, 88 L.Ed. 949 (1944).

At issue in this case is whether the time spent by Plaintiffs during their meal periods is compensable "work" under the FLSA. If it is, then Plaintiffs who have generally worked more than forty hours per week are entitled to overtime compensation under § 207(a)(1). Not paying employees for meal time is an exception to the FLSA compensation requirements that must be narrowly construed, and the burden is on the Defendant to show that it is entitled to the exception. *Johnson v. City of Columbia, S.C.,* 949 F.2d 127, 129–30 (4th Cir.1991).

## III. The Collective Bargaining Agreement

Corrections officers below the rank of lieutenant are represented by the Montgomery County Government Employees Organization ("MCGEO"), United Food and Commercial Workers Union, Local 1994.[3] MCGEO has negotiated a series of employment agreements with Montgomery County, and the Plaintiffs have not argued that they are not covered by these agreements. Each of these agreements contains a provision authorizing overtime work for employees who work more than eight hours per day or forty hours per week.

Defendant asserts that the parties have repeatedly discussed the issue of paid meal periods during the agreement negotiations, but that it has never become part of the agreement. Plaintiffs do not challenge this assertion. In fact, the agreements clearly state that meal periods are not to be included while computing compensation. Thus, Defendant argues that the Court should defer to this apparent agreement by the parties that Plaintiffs' meal periods should not be defined as compensable work.

The Fourth Circuit has recognized a policy favoring arbitration of labor disputes. *See Austin v. Owens–Brockway Glass Container, Inc.,* 78 F.3d 875, 879 (4th Cir.) (quoting *Adkins v. Times–World Corp.,* 771 F.2d 829, 831 (4th Cir.1985), *cert. denied,* 474 U.S. 1109, 106 S.Ct. 896, 88 L.Ed.2d 930 (1986)), *cert. denied,* —— U.S. ——, 117 S.Ct. 432, 136 L.Ed.2d 330 (1996). However, such deference does not apply to the FLSA. The Supreme Court has made it clear that "congressionally granted FLSA rights take precedence over conflicting provisions in a collectively bargained compensation arrangement." *Barrentine v. Arkansas–Best Freight Sys., Inc.,* 450 U.S. 728, 740–41, 101 S.Ct. 1437, 1445, 67 L.Ed.2d 641 (1981). This different policy is based on the Supreme Court's belief that courts should not defer to an arbitral decision under a collective bargaining arbitration arrangement

---

**2.** Section 207(k) provides special rules for fire protection and law enforcement agencies, which are allowed to base their payments to employees on a twenty-eight day period. Neither party argues that § 207(k) applies to this case.

**3.** Prior to Local 1994, the officers were represented by Local 400.

when a statute is designed to provide basic protections to workers. *See id.* at 737, 101 S.Ct. at 1443. The FLSA is this type of statute; it was designed to provide fundamental protections for employees regarding minimum wages and oppressive hours. *See id.* at 739, 101 S.Ct. at 1444. These FLSA rights are nonwaivable, and "cannot be abridged by contract." *See id.* at 740–41, 101 S.Ct. at 1444–45. "In sum, the FLSA rights petitioners seek to assert in this action are independent of the collective-bargaining process. They devolve on petitioners as individual workers, not as members of a collective organization. They are not waivable." *Id.* at 745, 101 S.Ct. at 1447.[4] While *Barrentine* dealt with arbitration procedures, its emphasis on FLSA's guarantees to individual workers applies to this case. Thus, the Court may consider Plaintiffs' claims regardless of whatever agreements MCGEO and the County may have reached.

Defendant relies on a Seventh Circuit case involving Chicago police officers, in which that court deferred a meal period dispute to a collectively-bargained grievance process because the agreement in question protected the officers' right to overtime pay. *See Leahy v. City of Chicago, Ill.,* 96 F.3d 228 (7th Cir.1996), *cert. denied* — U.S. ——, 117 S.Ct. 1818, 137 L.Ed.2d 1027 (1997). The agreement stated that officers were entitled to overtime pay for hours worked in excess of eight hours per day or forty hours per week. *Id.* at 232. The court concluded that since the FLSA right to overtime pay was protected, the individualized grievance process was a more efficient way to determine whether an officer's meal period should be considered compensable work. *See id.*[5]

The majority opinion in *Leahy* did not cite *Barrentine,* and this Court will not assume that the Seventh Circuit meant to disregard it. At least one other court has warned against interpreting *Leahy* too broadly, although that court's opinion was an unpublished disposition. *See Adam v. Brown County,* 1997 WL 406265 at *3 (Wis.Ct.App. July 22, 1997) (unpublished disposition). The Wisconsin court seems to suggest that *Leahy* should be read within the context of the Supreme Court's 1944 decision allowing labor agreements to make reasonable provisions when the computation of hours worked is difficult to do in a particular employment setting. *See id.* (citing *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123,* 321 U.S. 590, 602–03, 64 S.Ct. 698, 705–06, 88 L.Ed. 949 (1944)). The *Leahy* court did rely on the *Tennessee Coal* principle. *See Leahy,* 96 F.3d at 232 (citing a number of Supreme Court cases and concluding "[t]his means that employers and employees may resolve whether certain activity is 'work' through a collective bargaining agreement, as long as the agreement comports with the FLSA.").

■ This Court agrees with the unpublished suggestion of the Wisconsin appellate court. Where it is difficult to determine whether certain time is compensable "work" in a specific employment situation, it is appropriate to defer to an agreement reached by the employee and the employer. However, where an employee is not being paid for time that is clearly compensable, and where that lack of payment leads to a violation of the FLSA's overtime requirements, this Court will not defer to an agreement and will instead rule to protect the employee's congressionally-granted rights to overtime pay.

As a means of illustration, in *Leahy,* the court noted that the Seventh Circuit applies the "predominant benefit test," discussed *infra* in Part IV.A, in deciding whether a worker is sufficiently relieved of duty so that her meal time is not compensable. *Leahy,* 96 F.3d at 231 n. 2. The Court decided that it would not order payment for all 12,000 officers because some of their meals were inter-

---

4. The Second Circuit has noted that Barrentine received renewed vitality from the Supreme Court's decision in *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). *See Tran v. Tran,* 54 F.3d 115, 118 (2d Cir.1995), *cert. denied,* — U.S. ——, 116 S.Ct. 1417, 134 L.Ed.2d 542 (1996).

5. Judge Cudahy dissented, arguing that the majority wrongly deferred to the collective bargaining agreement. *See Leahy,* 96 F.3d at 235 ("Indeed, the assertion that merely by providing for overtime pay in its collective bargaining agreement an employer may insulate itself from FLSA scrutiny borders on the preposterous. Yet the majority's opinion essentially boils down to just such an assertion.") (Cudahy, J., dissenting).

rupted. Instead, the Court preferred allowing individual officers to bring overtime claims through the grievance process. *Id.* at 232. In contrast, this court will apply the Fourth Circuit's "completely relieved of duty" standard, also discussed *infra* in Part IV.A. Because the Court concludes that under this standard Plaintiffs are clearly entitled to compensation for both interrupted and uninterrupted meal periods, the Court will not defer to the collective bargaining agreement or the grievance process and instead will grant relief under the FLSA.[6]

## IV. Meal Period Compensation

### A. Applicable Standard

■ As discussed *supra,* the FLSA guarantees an employee's right to overtime pay for hours worked in excess of forty hours per week. Parties often dispute whether certain hours should be considered "work" for the purpose of computing overtime. Often, these disputes concern time employees spend eating meals.

The Department of Labor issued its interpretation concerning when time spent during meal periods is compensable work. According to the Department of Labor, a worker need not be compensated for a meal period, as long as it is a bona fide meal period. The Department's explanation of bona fide meal periods is as follows:

> (a) *Bona fide meal periods.* Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest peri-

ods. The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating.

> (b) *Where no permission to leave premises.* It is not necessary that an employee be permitted to leave the premises if he is otherwise completely freed from duties during the meal period.

29 C.F.R. § 785.19 (citations omitted).

This regulation led to the "completely relieved of duty standard," which uses the exact words used by the Department of Labor and looks to whether an employee is completely freed from work-related tasks. *See Bagrowski v. Maryland Port Authority,* 845 F.Supp. 1116, 1119 (D.Md.1994). According to the regulations, a worker who is required to perform any duties, active or inactive, during her meal period must be compensated for the time. 29 C.F.R. § 785.19(a). Other courts have moved away from a literal reading of the regulations, using instead the "predominant benefit" test or the "primarily engaged in work-related duties" test, focusing on whether the employee's time was spent predominantly for her own benefit, or pre-

---

**6.** Defendant also cites *Hennessey v. United States Dept. of Defense,* 46 F.3d 356 (4th Cir.1995), and *Carter v. Gibbs,* 909 F.2d 1452 (Fed.Cir.), *cert. denied sub nom. Carter v. Goldberg,* 498 U.S. 811, 111 S.Ct. 46, 112 L.Ed.2d 22 (1990). *Hennessey* is a Fourth Circuit case that also referred a meal period dispute to an arbitrator for resolution. *Hennessey,* however, dealt with federal employees. Federal employees are covered by the Civil Service Reform Act, which requires federal workers to specifically preserve their right to bring FLSA claims in court. *Id.* at 359 (the CSRA "establishes that '[grievance] procedures shall be the exclusive procedures for resolving grievances which fall within its coverage'" but "'[a]ny collective bargaining agreement may exclude any matter from the application of the grievance procedures which are provided for in the agreement'" (quoting 5 U.S.C. §§ 7121(a)(1),

(2))). While the court in *Hennessey* ruled that the employees had reserved the right to bring overtime claims under the FLSA by excluding them from the grievance procedures, it found that the meal period dispute fell within the grievance procedure. *Id.* at 359–60. Judge Luttig dissented, arguing that the meal period dispute was an essential part of the overtime claim and that the employees should be allowed to argue both in court. *Id.* at 360–61 (Luttig, J., concurring in part and dissenting in part). This Court reads *Hennessey,* as well as *Carter v. Gibbs,* as a decision dealing with the requirements of the Civil Service Reform Act and the failure of the federal employees to specifically exclude meal period disputes from their grievance procedures. Thus, the Court does not consider *Hennessey* controlling on the present case.

dominantly for her employer's benefit. *See, e.g., Henson v. Pulaski County Sheriff Dept.,* 6 F.3d 531, 534–35 (8th Cir.1993) (finding completely relieved of duty standard "unrealistic" and inconsistent with Supreme Court's FLSA interpretations); *Lamon v. City of Shawnee, Kan.,* 972 F.2d 1145, 1157 (10th Cir.1992) (using primarily engaged test, and saying "That a police officer is on-call and has some limited responsibilities during meal periods does not perforce mean the officer is working."), *cert. denied,* 507 U.S. 972, 113 S.Ct. 1414, 122 L.Ed.2d 785 (1993); *Bagrowski,* 845 F.Supp. at 1119. This test may derive from a 1944 Supreme Court case, where the Court stated that "[w]hether time is spent predominantly for the employer's benefit or for the employee's is a question dependent upon all the circumstances of the case." *Armour & Co. v. Wantock,* 323 U.S. 126, 133, 65 S.Ct. 165, 168, 89 L.Ed. 118, (1944). *See Reich v. Southern New England Telecomms. Corp.,* 121 F.3d 58, 64 (2d Cir. 1997) (citing *Armour* in using predominant benefit test).

Defendant argues that the Fourth Circuit has not formally adopted any of the above tests, and urges the Court to follow *Bagrowski,* where the court used the primarily engaged test. *See Bagrowski,* 845 F.Supp. at 1120 ("no reasonable fact-finder could find from the evidence that Plaintiffs were primarily engaged in work-related activities while they were at lunch"). There are a number of cases in which the Fourth Circuit has used the "completely relieved of duty" language without explicitly stating that it was adopting it as the Circuit's test. *See Johnson v. City of Columbia, S.C.,* 949 F.2d 127, 129 (4th Cir.1991) (" § 785.19 only permits the exclusion of meal time from compensable hours where a 'bona fide meal period' is provided—i.e., '[t]he employee must be completely relieved from duty for purposes of eating regular meals.'" (quoting § 785.19)); *Donovan v. Bel–Loc Diner, Inc.,* 780 F.2d 1113, 1115 n. 1 (4th Cir.1985) (citing § 785.19 and saying "[t]o qualify as a bona fide non-compensable break, the respite must be uninterrupted and at least thirty minutes in duration, and the employee must be completely relieved from duty").

Defendant argues that the Fourth Circuit was merely paraphrasing the language from § 785.19 and did not explicitly adopt the completely relieved of duty standard. Defendant cites *Bagrowski,* which applied the primarily engaged test, *see Bagrowski,* 845 F.Supp. at 1120, and *Roy v. County of Lexington, S.C.,* 928 F.Supp. 1406 (D.S.C.), *vacated, in part,* 948 F.Supp. 529 (1996). In *Roy,* the District Court stated in a footnote that neither party argued that the Fourth Circuit had adopted a test, and that in *Donovan* the Fourth Circuit was merely paraphrasing the regulation. *See Roy,* 928 F.Supp. at 1417 n. 19. Other courts have interpreted the Fourth Circuit opinions as adoptions of the completely relieved of duty test. *See Reich v. Southern New England Telecomms. Corp.,* 121 F.3d 58, 65 (2d Cir. 1997) (stating *Donovan* adopted, without comment, the completely removed from duty standard from § 785.19); *Henson v. Pulaski County Sheriff Dept.,* 6 F.3d 531, 535 (8th Cir.1993) (saying *Donovan* cited "with approval" the completely relieved of duty standard in § 785.19); *Rotondo v. City of Georgetown, S.C.,* 869 F.Supp. 369, 376 (D.S.C.1994) (citing the Fourth Circuit's opinion in *Johnson* as controlling because "it appears that the Fourth Circuit Court of Appeals applies the 'completely relieved of duty' test").

■ The Court begins with the premise that regulations or interpretations of an agency such as the Department of Labor, while not binding on the Court, serve as a body of experience and informed judgment. *See Monahan v. County of Chesterfield, Va.,* 95 F.3d 1263, 1273 n. 10 (4th Cir.1996). Next, the Court notes that language of § 785.19 could not be clearer in saying that "[t]he employee must be completely relieved from duty for the purposes of eating regular meals." The meaning of this statement is emphasized by the sentence "[t]he employee is not relieved if he is required to perform any duties, whether active or inactive, while eating." 29 C.F.R. § 785.19(a).

A recent Fourth Circuit case, decided after Chief Judge Motz's opinion in *Bagrowski,* persuades this Court that the Fourth Circuit applies the completely relieved of duty standard. In *Monahan v. County of Chester-*

*field, Va.,* 95 F.3d 1263 (4th Cir.1996), the court considered a suit by police officers who claimed that they were entitled to compensation for "gap time" or "straight time," hours worked in excess of the normally scheduled work week.[7] *See id.* at 1266. In *Monahan,* the court discussed a District of Kansas case involving straight time. *See id.* at 1268 (discussing *Lamon v. City of Shawnee, Kan.,* 754 F.Supp. 1518 (D.Kan.1991)). The Fourth Circuit noted that the District of Kansas case was reversed, in part, by the Tenth Circuit. *Id.* (citing *Lamon v. City of Shawnee, Kan.,* 972 F.2d 1145 (10th Cir.1992), *cert. denied* 507 U.S. 972, 113 S.Ct. 1414, 122 L.Ed.2d 785 (1993)). The Fourth Circuit called the district court case *"Lamon I"* and the circuit court case *"Lamon II." Id.*

In its opinion, the *Monahan* court favorably cited, in part, the district court's ruling in *Lamon.* The Fourth Circuit stated that "[w]e agree with the holding of *Lamon I* to the extent that meal time is compensable if employees are not completely relieved of their duties." *Id.* at 1282. The Fourth Circuit cited its opinion in *Johnson v. City of Columbia, S.C.,* which, as mentioned *supra,* had also cited the "completely relieved from duty" language. *See id.* (citing *Johnson,* 949 F.2d at 129). That the Fourth Circuit chose to agree with the District Court in *Lamon* is especially noteworthy because the Tenth Circuit overruled the district court on this issue.

*See Lamon,* 972 F.2d at 1156–58.[8] Because the Fourth Circuit has repeatedly used the "completely relieved of duty" language, and because the meaning of the regulation is unambiguous, this Court concludes that the proper test to apply within the Fourth Circuit is the completely relieved of duty test.

### B. *Analysis under the Completely Relieved of Duty Standard*

■ Plaintiffs should be compensated for their meal periods if they are not completely relieved of duty during the thirty-minute meal period. The Eleventh Circuit has focused on whether employees are subject to "real limitations on their freedom during mealtime which inure to the benefit of the county." *Kohlheim v. Glynn County, Ga.,* 915 F.2d 1473, 1477 (11th Cir.1990). The admissions of the Defendant, as well as the deposition testimony of the supervising officers at the facility, who are not plaintiffs in this case,[9] demonstrates to the Court that Plaintiffs are subject to very real limitations during their meal periods.

Defendant admits[10] that most of the time, most officers are required to wear their uniforms during their meal periods, may not sleep during the meal period, and also may not use the facility's gymnasium. Officers may use the gymnasium before or after their shifts but not during their meal breaks.

7. *Monahan* was governed by the law enforcement exception of § 207(k) and 29 C.F.R. § 553.20. *See Monahan,* 95 F.3d 1263, 1265–66.

8. The *Lamon* decision involved officers paid under the § 207(k) exception. *Lamon,* 972 F.2d at 1156–58. As explained by the 10th Circuit, § 553.223(b) governs compensable meal periods in § 207(k) situations. *See id.* at 1156. The Tenth Circuit noted that both § 553.223(b) and § 785.19 contain the "completely relieved of duty language," but § 553.223(b) does not have § 785.19's language that "[t]he employee is not relieved if he is required to perform any duties, whether active or inactive, while eating." The Court did not rule on whether the two sections should be interpreted differently. *See id.* at 1157 & 1158 n. 18. While one court has found that workers may be required to perform more duties for uncompensated time under § 552.223(b) than under § 785.19, *see Avery v. City of Talladega, Ala.,* 24 F.3d 1337, 1345–46 (11th Cir.1994), another court has argued that there is no reason for different interpretations, *see Brinkman v.*

*Dept. of Corrections of Kan.,* 804 F.Supp. 163, 171 (D.Kan.1992), *aff'd* 21 F.3d 370 (10th Cir.), *cert. denied* 513 U.S. 927, 115 S.Ct. 315, 130 L.Ed.2d 277 (1994).

9. There are a group of officers who govern the facility. The Colonel is the highest ranking direct supervisor of corrections officers. Colonel Dep. at 6. The Colonel reports directly to the assistant warden. *Id.* Ranking immediately below the Colonel are three captains. *Id.* A fourth captain who worked in an administrative capacity recently resigned. Colonel Dep. at 7. Three lieutenants report to each captain. *Id.* at 6–7. These lieutenants normally serve as shift commanders, but a captain will serve as shift commander if no lieutenant is present. Captain J. Dep. at 5. The lieutenants, captains and the Colonel supervise the corrections officers.

10. *See* Plaintiffs' First Requests for Admiss. and Def.'s Resp. to Pls.' First Requests for Admiss. of Fact.

Captain J. Dep. at 27.[11] In addition, officers occasionally pick up items or check accounts for inmates during the officers' lunch periods. Captain G. Dep. at 29–31; Captain J. Dep. at 32–33.

Corrections officers may eat their meals in the staff dining room, at picnic tables on facility grounds, or in the officers' cars. Colonel Dep. at 75, 77–78, 114; Captain G. Dep. at 15; Captain R. Dep. at 9, 49. Because the dining room is staffed by inmates and officers are in close proximity to the inmates, officers who eat in the dining room are forced to limit their conversations and reading material. Captain G. Dep. at 25–26, 84; Captain R. Dep. at 36–7, 41; Captain J. Dep. at 33–34. In addition, until recently there was no television set in the dining room. Colonel Dep. at 91–92; Captain G. Dep. at 26. One captain testified that he normally saw six or seven officers eating in the dining room when he would take his meal break. Captain G. Dep. at 24.

The officers are not free to go wherever they wish during their meal periods. The Defendant admits that an officer may not leave the staff dining room to go outside the building and smoke without the permission of the officer's shift commander. See Pls.' First Requests for Admiss. No. 28 and Def.'s Resp. to Pls.' First Requests for Admiss. of Fact No. 2. Two of the three captains, and numerous Plaintiffs, testified that officers may not leave the building for any reason without first obtaining permission from a captain or a lieutenant, Captain R. Dep. at 20; Captain J. Dep. at 15, although some Plaintiffs testified that permission is never denied. Plaintiff J. Dep. at 13; Plaintiff P. Dep. at 15. The Colonel and all three captains testified that officers may not leave the grounds of the facility without permission. Colonel Dep. at 73; Captain R. Dep. at 10; Captain J. at 38–39; Captain G. Dep. at 47–

48. They also agreed that it is rare for an officer to receive permission to leave the facility grounds during a meal period. Colonel Dep. at 73 ("I would say it would be unusual that they have permission to leave the premises"); Captain R. Dep. at 17–19 (stating that the officer "would have to have a really good reason," and that the officers have been told that they need a really good reason, and that he was only asked for permission on two occasions in the past year); Captain G. Dep. at 48 (when asked whether an officer could leave the premises to run an errand, responding that "[I]t is really not usually done. That would be a very rare case."); Captain J. Dep. at 38–39 (situations are rare, and he has given permission two times in the past year).[12] Finally, officers may be disciplined for being off the premises without permission. Captain J. Dep. at 48.

Defendant admits that officers are subject to being recalled during their meal periods. See Pls.' First Requests for Admiss. and Def.'s Resp. to Pls.' First Requests for Admiss. of Fact. Officers hear recalls during their meal periods because they usually keep a radio with them that is turned on. Colonel Dep. at 59–60; Captain R. Dep. at 21–22 (officers are supposed to carry radios, keep them turned on, and listen to them so that they can be reached or if there is an emergency). When an officer hears a recall during a meal period, she is expected to respond to it. Captain G. Dep. at 32. These recalls may be for an inmate recount, Captain R. Dep. at 28, shakedowns [13] of inmate areas or cells, Captain G. Dep. at 44, to assist another officer in need,[14] Captain R. Dep. at 28–29, or to serve a meal to an inmate, Captain R. Dep. at 44; Captain J. Dep. at 21.

The parties dispute how often these recalls interrupt an officer's meal period. Based on the claims of the parties and the deposition

---

**11.** All exhibits have been filed under seal. No officer will be identified by name. Officers will be referred to by their rank and, at times, a single letter.

**12.** Department of Labor regulations state that an employee does not have to be able to leave the premises if he is otherwise freed from duties during the meal period. 29 C.F.R. § 785.19(b). However, Plaintiffs are not otherwise completely

freed from their duties, and the Court considers the restrictions on their movement a relevant factor in this determination. See *Kohlheim*, 915 F.2d at 1477 n. 19.

**13.** Conducting a search for contraband.

**14.** For example, if there is a fight between inmates.

testimony, it seems likely that recalls occur a few times a month and while some officers are never interrupted, others are interrupted intermittently throughout the year. *See* Colonel Dep. at 94; Def.'s Cross–Mot. for Summ. J. at 27; Pls.' Reply Mem. in Supp. of Pls.' Mot. for Summ. J. as to Liab. and in Opp. to Def.'s Mot. for Summ. J. at 28–29.

It is clear to the Court that the officers listen to their radios and do not leave the premises because Defendant needs them available to provide security services at the facility. Although they may not be recalled often, the officers essentially are in a state of readiness, prepared to provided security assistance when needed. It is true that the officers are not performing as many duties during the meal period as they do when they are at their posts. However, a significant reason corrections officers are employed is to have appropriate staff on hand if and when there is a security problem with the inmate population. Corrections officers are paid, in part, just to be present at the facility in anticipation of security problems. By keeping Plaintiffs on site and tuned to their radios while they eat their meals, Defendant reaps the benefit of having a full staff of corrections officers on hand.

Defendant submits deposition excerpts in which officers, both high- and low-ranked, state that officers usually have an uninterrupted one-half hour meal period. *See, e.g.,* Colonel Dep. at 110; Captain R. Dep. at 51; Plaintiff T. Dep. at 16, 21. This testimony does not affect the Court's conclusion of law. A corrections officer is very different from a store clerk who sits outside or goes into a back room to eat lunch for half an hour. The hypothetical store clerk is hired to maintain inventory, answer customer questions, carry packages, etc. During his meal period, even if he is not allowed to leave the premises, the store clerk is not performing any of the tasks he was hired to do. In contrast, Plaintiffs principally are hired to stand at post and watch the inmates, service the inmates, and be prepared for and respond to security problems. While only some officers are close to inmates during the meal periods, and officers only occasionally are called upon to service inmates during their meal periods, the officers continuously provide the security presence that is necessary to run a correctional facility.

That the officers carry their radios and listen for recalls, may not leave the facility, and intermittently respond to security calls reveals that they are not completely relieved of duty. The deposition testimony of the Colonel and one of the captains confirms this. The Colonel was asked why the officers are generally required to stay on the premises during their meal breaks. The Colonel answered "In case an emergency occurs," such as certain assistance calls. Colonel Dep. at 73–74. In addition, one of the captains gave the following deposition testimony:

Q. And they are not supposed to leave the Detention Center property during their meal periods, are they?

A. They are not supposed to.

Q. And the reason for that is what?

A. There is [sic] a number of reasons. One is for, in other words, accountability, *to know where the officers are, in case you need them.* I think it would probably be kind of hard to explain if the officer was off the premises and was involved in a wreck or something, you know, *and he is on duty,* but he is somewhere at 7–Eleven, something like this. So, no, they are not supposed to leave the property.

Captain J. Dep. at 27–28 (emphasis added). Another captain said the reason why officers may not leave is "just in case something happens, they would need to be accountable for it so they can respond if needed." Captain G. Dep. at 15. *See also Kohlheim,* 915 F.2d 1473, 1477 (11th Cir.1990) ("The mealtime restrictions benefit the county by ensuring maintenance of an available pool of competent firefighters for immediate response to emergency situations. The firefighters are subject to real limitations on their freedom during mealtime which inure to the benefit of the county. .…"); *Glenn L. Martin Neb. Co. v. Culkin,* 197 F.2d 981, 985 (8th Cir.) ("[B]oth the guards and the firemen served to a considerable extent in a stand-by capacity. In the latter respect both were engaged in their regular duties during the 30–minute period as effectively as if they were putting

down disturbances or putting out fires."), *cert. denied* 344 U.S. 866, 73 S.Ct. 108, 97 L.Ed. 671 (1952). Thus, the reason why the officers may not leave the facility and must respond to their radio during their meal periods is that they are still being used as part of a security force. *See Armour & Co. v. Wantock*, 323 U.S. 126, 133, 65 S.Ct. 165, 168, 89 L.Ed. 118 (1944) ("Refraining from other activity often is a factor of instant readiness to serve, and idleness plays a part in all employments in a stand-by capacity. Readiness to serve may be hired, quite as much as service itself . . ."). Accordingly, Plaintiffs deserve to be paid for the service they are providing to the county.

Other cases involving officers working in correctional facilities support the Court's conclusion that the Plaintiffs are not completely relieved of duty. In a case where the corrections officers were subject to very similar restrictions as the Plaintiffs here, the District of Kansas found that there was a genuine issue of material fact even under the predominant benefit test, *see Brinkman v. Dept. of Corrections of Kan.*, 804 F.Supp. 163, 168, 173 (D.Kan.1992), and the jury later returned a verdict for the plaintiffs. *See* 21 F.3d 370 (10th Cir.), *cert. denied*, 513 U.S. 927, 115 S.Ct. 315, 130 L.Ed.2d 277 (1994). Similarly, in an older case cited in § 785.19, the Eighth Circuit upheld a jury verdict for privately employed guards because they were constantly in a stand-by capacity even though actual interruptions were infrequent. *See Glenn L. Martin Neb. Co. v. Culkin*, 197 F.2d at 984–85.[15] *But see Agner v. United States*, 8 Cl.Ct. 635, 638 (1985) (granting summary judgment for Defendant even though Plaintiffs had to eat on premises, kept their radios on, and were subject to emergency call), *aff'd* 795 F.2d 1017 (Fed.Cir. 1986).

Moreover, cases not involving correctional officers but applying the completely relieved of duty standard also support the Plaintiffs. *See Kohlheim v. Glynn County, Ga.*, 915 F.2d at 1477 (on appeal from summary judgment order, finding meal periods of firefight-

ers must be included for overtime purposes because they had to remain at station to respond to emergency calls and had significant affirmative restrictions); *Wahl v. City of Wichita, Kan.*, 725 F.Supp. 1133, 1142–43 (D.Kan.1989) (citing security guard cases and granting partial summary judgment in favor of police officers who had geographic limitations, had to restrict their personal conduct, and had to remain vigilant during meal break); *Nixon v. City of Junction City, Kan.*, 707 F.Supp. 473, 477–79 (D.Kan.1988) (denying summary judgment on other grounds but concluding officers were not completely relieved of duty because they were required to remain on call during meal periods and had to respond as if they were on patrol).

### Conclusion

Plaintiffs are not completely relieved of duty during their meal periods. This time must be included in computations of overtime pay, and the Plaintiffs have a claim under the FLSA's overtime provisions of 29 U.S.C. § 207(a)(1). Because this time is not difficult to define as work, and because it is not difficult to compute, the Court will not defer to the collective bargaining agreement worked out between the parties. The parties generally agree that Plaintiffs are usually paid for eight hours per day and not the half-hour meal period. Most officers seem to be entitled to two and one-half hours of overtime pay for every week that they have worked. Because the parties have not briefed the issue of the proper measure of damages under the facts of this case and the FLSA, the Court will grant summary judgment for the Plaintiffs on the issue of liability and will refer the issue of damages under the FLSA's overtime provisions to a United States Magistrate Judge. A separate order consistent with this opinion will follow.

### ORDER

In accordance with the Memorandum Opinion, it is this 4th day of November, 1997 ORDERED:

---

**15.** The Eighth Circuit has recently stated that the *Glenn L. Martin* court implicitly applied the predominantly-for-the-benefit-of-the-employer stan-

dard. *See Henson v. Pulaski County Sheriff Dept.*, 6 F.3d 531, 534 (8th Cir.1993).

1. That the Plaintiffs' Motion for Summary Judgment as to Liability BE, and the same hereby IS, GRANTED, and

2. That the Defendant's Cross–Motion for Summary Judgment BE, and the same hereby IS, DENIED, and

3. That the issue of determining the precise amount of damages be referred to a United States Magistrate Judge, and

4. That the Clerk of the Court mail copies of this Order and the Memorandum Opinion to all counsel of record.