**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FRED BAMONTE; JAVIER COTA;
RICARDO PERINE, and other
similarly situated employees,
        *Plaintiffs-Appellants,*

v.

CITY OF MESA, a body politic,
        *Defendant-Appellee.*

No. 08-16206

D.C. No.
2:06-cv-01860-
NVW

OPINION

Appeal from the United States District Court
for the District of Arizona
Neil V. Wake, District Judge, Presiding

Argued and Submitted
June 1, 2009—Las Vegas, Nevada

Filed March 25, 2010

Before: Ronald M. Gould and Johnnie B. Rawlinson,
Circuit Judges, and Lloyd D. George,* District Judge.

Opinion by Judge Rawlinson;
Partial Concurrence and Partial Dissent by Judge Gould

---

*The Honorable Lloyd D. George, U.S. District Judge for the District
of Nevada, sitting by designation.

**COUNSEL**

William B. Aitchison (argued) and Breanne M. Sheetz, Atchison & Vick, Inc., Portland, Oregon, for appellant Fred Bamonte.

J. Mark Ogden, Laurent R.G. Badoux (argued), and Michael J. Lehet, Littler Mendelson, Phoenix, Arizona, for appellee City of Mesa.

**OPINION**

RAWLINSON, Circuit Judge:

Appellants, police officers employed by Appellee City of Mesa (City), challenge the district court's entry of summary judgment in favor of the City. The officers contended that the City violated the Fair Labor Standards Act (FLSA) by failing to compensate police officers for the donning and doffing of their uniforms and accompanying gear. Because officers had the option of donning and doffing their uniforms and gear at home, the district court determined that these activities were not compensable pursuant to the FLSA and the Portal-to-Portal Act. We agree that these activities were not compensable pursuant to the FLSA, and affirm the district court's judgment.

## I.  BACKGROUND

The City of Mesa, like most other municipalities, requires its police officers to wear certain uniforms and related gear, usually including trousers, a shirt, a nametag, a clip-on or vel-cro tie, specified footwear, a badge, a duty belt, a service weapon, a holster, handcuffs, chemical spray, a baton, and a portable radio. The wearing of body armor is optional, although the officers are required to have the body armor available.

In support of their argument that the time spent donning and doffing the uniform and related gear was compensable, the police officers emphasized the relationship between their uniform and gear and the performance of their duties. Specifi-cally, the officers relayed their belief that the uniforms and gear contribute to their command presence, thereby promoting officer and public safety in furtherance of law enforcement goals.

The officers also explained that it was *preferable* to don and doff their uniforms and gear at the police station. The explanation included the following considerations: (1) the risk of loss or theft of uniforms and gear at home; (2) potential access to the gear by family members or guests; (3) distrac-tions at home that might interfere with the donning process; (4) safety concerns with performing firearm checks at home; (5) discomfort associated with wearing the gear while com-muting; (6) the increased risk of being identified as a police officer while off-duty; and (7) potential exposure of family members to contaminants and bodily fluids.

The City was not oblivious to the concerns expressed by the officers. Each officer is provided a locker at the station, and facilities are available for the officers to don and doff their uniforms and related gear. In sum, officers have the option to don and doff at home or at work. No requirement is imposed on officers by the City, with the exception of

motorcycle officers, who are required to don and doff their uniforms and gear at home, because their shifts begin when they leave their residences.

On these facts, the district court granted the City's motion for summary judgment, concluding that, because officers had the option and ability to don and doff their uniforms and gear at home, the specific activity of donning and doffing uniforms and gear at the workplace was not compensable. The officers filed a timely notice of appeal.

## II. STANDARDS OF REVIEW

"We review de novo the district court's order granting summary judgment." *San Diego Police Officers' Ass'n v. San Diego City Employees' Retirement Sys.*, 568 F.3d 725, 733 (9th Cir. 2009) (citation omitted). "In doing so we are governed by the same principles as the district court: whether, with the evidence viewed in the light most favorable to the non-moving party, there are no genuine issues of material fact, so that the moving party is entitled to a judgment as a matter of law." *Id.* (citation omitted).

"Interpretations of the FLSA and its regulations are questions of law, and appellate courts review district court interpretations de novo." *Gieg v. DDR, Inc.*, 407 F.3d 1038, 1044-45 (9th Cir. 2005) (citation omitted).

## III. DISCUSSION

[1] "It is axiomatic, under the FLSA, that employers must pay employees for all hours worked." *Alvarez v. IBP, Inc.*, 339 F.3d 894, 902 (9th Cir. 2003), *aff'd on other grounds sub nom. IBP v. Alvarez*, 546 U.S. 21 (2005) (citations and internal quotation marks omitted). "Work, the Supreme Court has long noted, is physical or mental exertion (whether burdensome or not) *controlled or required by the employer* and pursued necessarily and primarily for the benefit of the

employer." *Id.* (citation and internal quotation marks omitted) (emphasis added). However, "[t]hat such activity is work as a threshold matter does not mean without more that the activity is necessarily compensable. The Portal-to-Portal Act of 1947 relieves an employer of responsibility for compensating employees for activities which are preliminary or postliminary to the principal activity or activities of a given job." *Id.* (citation, alteration, and internal quotation marks omitted) (emphasis added).

The issue of compensation for donning and doffing clothing and gear is not new. In *Steiner v. Mitchell*, 350 U.S. 247 (1956), the Supreme Court considered

> whether workers in a battery plant must be paid as a part of their principal activities for the time incident to changing clothes at the beginning of the shift and showering at the end, where they must make extensive use of dangerously caustic and toxic materials, and are compelled by circumstances, including vital considerations of health had [sic] hygiene, to change clothes and to shower in facilities which state law requires their employer to provide, or whether these activities are preliminary or postliminary within the meaning of the Portal-to-Portal Act and, therefore, not to be included in measuring the work time for which compensation is required under the Fair Labor Standards Act.

*Id.* at 248 (internal quotation marks omitted). The case was decided against the backdrop of a manufacturing process where employees faced constant exposure to health-threatening, if not life-threatening, lead poisoning. *See id.* at 249-50. "[I]ndustrial and medical experts" agreed that "[s]afe operation . . . require[d] the removal of clothing and showering at the end of the work period." The required showering had "become a recognized part of industrial hygiene programs in the industry, and the state law . . . require[d] facilities for

this purpose . . ." *Id.* at 250 (citation omitted). The employer's insurer "would not accept the insurance risk if [the employers] refused to have showering and clothes-changing facilities for their employees." *Id.* at 251.

Recognizing that changing clothes and showering "fulfilled mutual obligations" between the employer and employee, the Supreme Court agreed with the trial court that these activities "constitute[d] time worked within the meaning of the Fair Labor Standards Act." *Id.* at 253 (footnote reference and internal quotation marks omitted).[1]

**[2]** The Supreme Court explicitly articulated that "activities performed either before or after the regular work shift, on or off the production line, are compensable under the portal-

---

[1]With due respect to our colleague in dissent, we suggest that our holding no more announces a bright-line location rule, *see Dissenting Opinion*, p. 4786, than did the courts in *Steiner*, *Alvarez*, and *Ballaris* [*v. Wacker Silitronic Corp.*, 370 F.3d 901 (9th Cir. 2004)]. Indeed, we specifically discuss the context of the donning and doffing of police uniforms by the Mesa police officers, including the facts that no law, rule or regulation required on-premises donning and doffing; and that no evidence was presented of benefit to the employer. *See infra* p. 4772. We refer to the "disparity in the circumstances" between this case and *Steiner*, *Alvarez*, and *Ballaris*, without limiting the reference solely to location. *See infra* p. 4774.

Ironically, our colleague in dissent proposes his own bright-line rule. According to the dissent and contrary to our holding in *Alvarez*, employees should be compensated for off-premises donning and doffing of "protective gear" if the gear is "indispensable" and "prevents unnecessary workplace injury." *Dissenting Opinion*, pp. 4795-96. Under this bright-line rule, donning and doffing of protective gear for any profession would be compensable. *See, e.g.*, *Haight v. Wackenhut Corp.*, No. 03 Civ. 9870 (SCR), ___ F. Supp. 2d ___, 2010 WL 769539, at *1 (S.D.N.Y. Mar. 2, 2010) (noting security officers' compensation claim for the donning and doffing of "protective equipment, including steel-toed shoes, hard[hat] helmet, safety glasses, [and] gun holster . . .). This expansive reading of the Portal-to-Portal Act flies in the face of expressed Congressional intent to limit rather than expand employer liability for wage payments. *See* 29 U.S.C. § 251(a).

to-portal provisions of the Fair Labor Standards Act if those activities are an integral and indispensable part of the principal activities . . ." *Id.* at 256. The Supreme Court concluded that "it would be difficult to conjure up an instance where changing clothes and showering are more clearly an integral and indispensable part of the principal activity of the employment than in the case of these employees." *Id.*[2]

---

[2]Our colleague in dissent mischaracterizes our holding as a "new rule." *See Dissenting Opinion*, p. 4788 n.1. In fact, our holding simply applies precedent as established in *Steiner*, *Alvarez*, and *Ballaris*. *See, e.g., Alvarez*, 339 F.3d at 903 (observing that "the donning and doffing of this gear *on the . . . plant's premises* is required by law, by rules of [the employer], and by the nature of the work . . .) (citation, alterations and internal quotation marks omitted) (emphasis added). Our colleague also laments that "any police department that mandates that its officers don and doff their uniforms and gear at the precinct must pay for that time, while those departments that make the donning and doffing location optional face no such requirement." *Dissenting Opinion*, p. 4788 n.1. Contrary to the dissent's perception, there is nothing "strange" about this eventuality. *Id.* As discussed above, the trilogy of definitive cases on this point, expressly consider this very factor in determining whether donning and doffing are compensable. *See Steiner*, 350 U.S. at 249 (noting that "removal of clothing and showering" was required) (citation omitted); *see also Alvarez*, 339 F.3d at 902 (explaining that the "donning and doffing rules were mandatory") (internal quotation marks omitted); *Ballaris*, 370 F.3d at 911 (recognizing that "as in *Alvarez*, [the employer] required [the employees] to change into and out of their uniforms at the plant . . .") (citations, footnote reference and internal quotation marks omitted). In addition, the employer in this very case expressly opted to require motorcycle officers to don and doff their uniforms and gear at home.

The dissent also cites *Steiner v. Mitchell*, 350 U.S. 247 (1956) in an effort to minimize the importance of the fact that all of the precedential cases involve required on-premises donning and doffing. Although our colleague in dissent speculates that "it seems unlikely that the Court would have concluded that [knife] sharpening was not compensable if the knifemen had enjoyed the option to do this task either at home or at the plant," *Dissenting Opinion*, p. 4788 n.1, the fact remains that this case and the other precedential cases all involved on-premises donning and doffing. No precedential case adopts the dissent's preferred holding. Although the dissent accuses the majority of "parting ways with *Steiner*, *Alvarez*, and *Ballaris*," *Dissenting Opinion*, p. 4790, it is actually the dissent that seeks to squeeze the nonanalogous facts of this case into the holdings of *Steiner*, *Alvarez*, and *Ballaris*, all of which involved required on-premises donning and doffing.

As we noted in *Alvarez*, 339 F.3d at 902, the Portal-to-Portal Act provides that:

> [N]o employer shall be subject to any liability or punishment under the [FLSA] . . . on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any of the following activities of such employee engaged in on or after May 14, 1947—
>
> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>
> (2) activities which are preliminary to or postliminary to said principal activity or activities,
>
> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities . . .

29 U.S.C. § 254(a) (1996).

The Department of Labor (DOL) has promulgated general policy statements regarding the Portal-to-Portal Act's effect on the determination of compensable activities. These policy statements are not entitled to deference, but are "entitled to respect . . . to the extent that [they] have the power to persuade." *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (citations and internal quotation marks omitted).

In 29 C.F.R. § 790.8, the DOL declared that principal activities "include[ ] all activities which are an integral part of a principal activity." 29 C.F.R. § 790.8(b) (footnote reference

omitted). Section 790.8 also provides the following example of integral activities:

> Among the activities included as an integral part of a principal activity are those closely related activities which are indispensable to its performance. If an employee in a chemical plant, for example, cannot perform his principal activities without putting on certain clothes, *changing clothes on the employer's premises* at the beginning and end of the workday would be an integral part of the employee's principal activity. On the other hand, if changing clothes is merely a convenience to the employee and not directly related to his principal activities, it would be considered as a preliminary or postliminary activity rather than a principal part of the activity. However, activities such as checking in and out and waiting in line to do so would not ordinarily be regarded as integral parts of the principal activity or activities.

29 C.F.R. § 790.8 (c) (footnote references and internal quotation marks omitted) (emphasis added). The DOL explained that "[s]uch a [compensable] situation may exist where the changing of clothes on the employer's premises is required by law, by rules of the employer, or by the nature of the work." *Id.* n.65.

In *Alvarez*, we applied *Steiner* and the Portal-to-Portal Act in the specific context of considering whether a meat processing plant must "compensate its employees for the time it takes to change into required specialized protective clothing and safety gear." 339 F.3d at 897. Prior to their shifts, the employees were required to "gather their assigned equipment, don that equipment in one of the . . . plant's four locker rooms, and prepare work-related tools before venturing to the slaughter or processing floors." *Id.* at 898. The employees' time was "strictly regulated and monitored." *Id.* at 899. For example, "[w]hen departing the processing and slaughter floors-

whether to go to the cafeteria or to the restroom-employees [were] permitted to leave only hats, hairnets, goggles, earplugs, and boots in place; outer garments, protective gear, gloves, scabbards, and chains [had to] be removed . . ." *Id.* (footnote reference omitted). Applying 29 C.F.R. § 790.8(c) n.65, we opined that "because the donning and doffing of this gear *on the . . . plant's premises* is *required by law, by rules of IBP, and by the nature of the work*, this donning and doffing is necessary to the principal work performed . . ." *Id.* at 903 (citation, alterations, and internal quotation marks omitted) (emphasis added).

*Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 903 (9th Cir. 2004), addressed whether the donning and doffing of uniforms at a silicon wafer manufacturing plant were compensable. In *Ballaris*, we were faithful to our precedent, observing that:

> Here, as in *Alvarez, [the employer] required [the employees] to change into and out of their uniforms at the plant, and only at the plant*, in the normal course of the employees' jobs. [The employer] issued instructions to [its] employees that they must wear the plant uniforms daily and strictly enforced this requirement. Employees were prohibited from leaving the plant in their uniforms and were monitored by security cameras and guards to ensure compliance. These facts weigh heavily in favor of a determination that the activity is not excluded by the Portal-to-Portal Act.

*Id.* at 911 (citations, footnote reference, and internal quotation marks omitted) (emphasis added). We held that, "[a]s in *Alvarez*, because the plant uniforms were required by the employer, and because the wearing of those uniforms was for the employer's benefit, the time spent putting them on and taking them off must be included as compensable time." *Id.* (citation and internal quotation marks omitted).

Because *Ballaris* parroted our holding in *Alvarez*, we look to *Alvarez* to glean the principles we should apply while working toward resolution of this case. In *Alvarez*, we focused on the particular "circumstances presented by that case. . . ." *See Alvarez*, 339 F.3d at 897, *see also id.* at 902 (agreeing with the district court "under the facts presented by this case."). Those particular circumstances included the facts that: (1) "the meat packing industry has been one of the most regulated businesses in the United States[,]" *id.* at 898; (2) all employees were required to don "a sanitary outer garment that [was] provided and washed each night . . ." *id.* n.2; (3) the employer "restructured its shift time to include four minutes of so-called "clothes' time . . ." *id.* at 899; (4) "[o]nce a shift [began], the . . . plant employees' time [was] strictly regulated and monitored, *id.*; (5) the employer's "donning and doffing rules" were mandatory, *id.*; and (6) the rules "fulfill[ed] mutual obligations of employer and employee." *Id.* at 901.

Applying the Portal-to-Portal Act and the holding of *Steiner* to these facts, we held that the employer was required to compensate its employees for the time spent donning and doffing the specialized gear. *See id.* at 904.[3]

**[3]** We discern a three-stage inquiry utilized in resolving the issue presented in *Alvarez*. The first stage addressed whether the activity constituted "work"; the second stage addressed whether the activity was an "integral and indispensable" duty; and the third stage addressed whether the activity was *de minimis*. *See id.* at 902-03. In *Alvarez*, we defined "work" as "physical or mental exertion . . . *controlled or required by the employer* and pursued necessarily and *primar-*

---

[3]We did not include within the umbrella of compensable activities time spent donning and doffing "non-unique protective gear such as hardhats and safety goggles . . ." *Id.* at 903. The dissent's insistence that compensation is mandated for the donning and doffing of the "non-unique protective gear" on the officers' uniform belt, *see Dissenting Opinion*, p. 4795, directly conflicts with this portion of our holding in *Alvarez*.

*ily for the benefit of the employer.*" *Id.* at 902 (citation omit-ted) (emphasis added).[4] The articulated definition of work contains two conjunctive components — activity that is "*con-trolled or required by the employer,*" *id.* (citation omitted) (emphasis added), *and* that is "pursued necessarily and *pri-marily for the benefit of the employer.*" *Id.* (citation omitted) (emphasis added); *see also Rodriquez v. Smith*, 541 F.3d 1180, 1186 (9th Cir. 2008) ("[U]se of the conjunctive indi-cates that *all* of the conditions listed must be met.") (citation omitted) (emphasis in the original); *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 947 (9th Cir. 2009) (observing that both prongs must be met for a legal test stated in the conjunctive).

**[4]** One could argue that under the facts of the case, the donning and doffing of the uniforms and related gear by the officers do not constitute work, simply because the donning and doffing are not required by the employer to be performed at the workplace, as was the case in *Steiner*, *Alvarez*, and *Bal-laris*. Such a conclusion would foreclose the officers' claim under the first stage of the *Alvarez* analysis. However, there is language in *Alvarez* that could be interpreted as supporting a finding of compensability as a function of the employer's requirement that the officers wear a uniform and related pro-tective gear. *See Alvarez*, 339 F.3d at 897. Giving credence to that potential argument, as advanced by the officers in this case, we proceed to the second stage of the *Alvarez* analysis — whether the activity arguably meeting the definition of work is contextually "integral and indispensable," i.e. "neces-sary to the principal work performed and *done for the benefit of the employer.*" *Id.* at 902-03 (citations omitted) (emphasis

---

[4]The dissent goes to great lengths to cite district court cases raising the issue of whether the employer requires on-premises donning and doffing. *See Dissenting Opinion*, pp. 4794-95. However, it is unsurprising that the parties recognized the importance of that issue due to its prominence in the precedential cases of *Steiner*, *Alvarez*, and *Ballaris*. *See Alvarez*, 339 F.3d at 902 (defining "work" as "exertion . . . *required by the employer . . .*") (citation omitted) (emphasis added).

added). It is at this stage that the officers' claims for compensability fatally falters.

In *Alvarez*, we determined that the "donning and doffing of job-related protective gear satisfied *Steiner's* bipartite "integral and indispensable" test. *Id.* at 903. We relied heavily on the fact that "the donning and doffing of this gear on the . . . plant's premises is required by law, by rules of [the employer], and by the nature of the work." *Id.* (citing 29 C.F.R. § 790.8(c) n. 65) (1999)) (alterations and internal quotation marks omitted). We explicitly noted that the employer, "by rule mandates the donning and doffing of clothes and gear at various intervals throughout the workday, requiring employees to wait for and to retrieve that gear in particular areas at particular times on the . . . plant's premises." *Id.* (citations, alteration and internal quotation marks omitted). Our conclusion was also predicated on the undisputed fact that the "donning, doffing, washing, and retrieving of protective gear [was], at both broad and basic levels, done for the benefit of [the employer]. These . . . activities allow [the employer] to satisfy its requirements under the law . . ." *Id.* (citations omitted).

**[5]** The facts we consider in this case are diametrically opposed to those that formed the contexts in *Steiner*, *Alvarez*, and *Ballaris*. In *Steiner*, *Alvarez*, and *Ballaris*, the employer mandated donning and doffing at the employer's premises. In this case, with the exception of motorcycle officers, donning and doffing at the workplace are entirely optional. In *Steiner* and *Alvarez*, the on-premises donning and doffing requirement was imposed to ensure compliance with the law. In this case, the officers have cited no law, rule or regulation mandating on-premises donning and doffing. In *Steiner* and *Alvarez*, on-premises donning and doffing "fulfill[ed] mutual obligations of employer and employee." *Alvarez*, 339 F.3d at 901; *see also Steiner*, 350 U.S. at 252. In this case, the officers identify no obligation on either side that would be fulfilled by on-premises donning and doffing. Finally, in *Steiner*, *Alvarez*,

and *Ballaris*, on-premises donning and doffing were expressly determined to be for the benefit of the employer. In contrast, in this case, the officers urged a conclusion of compensability primarily for reasons that were of sole benefit to the employee (risk of loss or theft of uniforms, potential access to gear by family members or guests, risk of performing firearm checks at home, discomfort while commuting, risk of being identified as officer while off-duty, and risk of exposing family members to contaminants and bodily fluids from encounters in the line of duty). Because of the disparity in the circumstances, we are not convinced that the holdings in *Steiner*, *Alvarez*, and *Ballaris* support a similar conclusion in this case that donning and doffing of uniforms and related gear on the employer's premises are compensable under the FLSA as "integral and indispensable" work activities. *Alvarez*, 339 F.3d at 903.

The dissent references the "context-specific" inquiry described in *Alvarez* to insert a factor that was never mentioned in *Steiner*, *Alvarez*, or *Ballaris* — "the practical difficulty" of donning or doffing off-site. *Dissenting Opinion*, p. 4789 & n.2. At the same time, the dissent ignores the other factors articulated in those cases, *i.e.*, whether on-premises doffing "fulfill[ed] mutual obligations of employer and employee[,]" *Alvarez*, 339 F.3d at 901; *see also Steiner*, 350 U.S. at 252; and whether on-premises donning and doffing primarily benefitted the employer. *See Alvarez*, 339 F.3d at 902-03.

In addition, the dissent's approach completely elides the fact that in *Alvarez*, we concluded that the time spent donning and doffing "non-unique protective gear such as hardhats and safety goggles . . . is not compensable." *Id.* at 903. Moreover, the dissent does not explain how its analysis applies to undercover officers, who do not wear the assigned protective gear, for obvious reasons. Finally, the dissent includes a litany describing the use and importance of the protective gear. *See Dissenting Opinion*, pp. 4795-96. However, there is not a

mention of why the gear is less effective if donned at the officer's home.[5]

Importantly, the dissent's argument bears no resemblance to the case brought by the officers. The officers urged that they be compensated because of their *preference* to don and doff at the workplace, not due to any of the factors set out in *Steiner* and *Alvarez.* Unlike the argument manufactured by the dissent, *see Dissenting Opinion*, p. 4796, the officers made absolutely no claim that donning and doffing the protective gear were done for the benefit of the employer. The dissent's contention rewrites the record of this case, and distorts the holding of *Alvarez. See Dissenting Opinion*, p. 4796. Indeed, the dissent cites only the portion of *Alvarez* observing that prevention of unnecessary workplace injury inures to the benefit of the employer. *See Alvarez*, 339 F.3d at 903. The dissent makes no mention of the other factors that contributed to the conclusion that on-premises donning and doffing benefitted the employer — satisfaction of the employer's obligations under the law and prevention of workplace contamination. *See id.* Aside from deviating from the officers' arguments, the dissent even ventures to speculate that police may be deterred from using protective gear, and "there may be increased injuries or even lives lost." *Dissenting Opinion*, p. 4797 n.5, a hyperbolic spectre never even hinted at by the officers with respect to the factors that determine compensability. In fact, it is insulting to even suggest that professional law enforcement officers would compromise their safety or the safety of the public for the sake of a few dollars. As far as the record reflects, donning and doffing of uniforms and protective gear in the City of Mesa have gone uncompensated to this day. Yet the record does not reflect that a single officer

---

[5]The dissent makes this very point with regard to the uniforms. *See Dissenting Opinion*, p. 4794 (noting the "ability of undercover officers, who wear no uniform, to effectively police"). The same is true of the protective gear.

elected to forego donning protective gear due to a lack of compensation.[6]

Subsequent to our decisions in *Alvarez* and *Ballaris*, the DOL considered the compensability of donning and doffing of clothing and gear at home. In a May 31, 2006, memorandum, the DOL advised that:

> donning and doffing of required gear is within the continuous workday only when the employer or the nature of the job mandates that it take place on the employer's premises. It is our longstanding position that if employees have the option and ability to change into the required gear at home, changing into that gear is not a principal activity, even when it takes place at the plant.

*Wage & Hour Adv. Mem.* No. 2006-2, at 3 (May 31, 2006) (2006 memorandum) (citation omitted).[7]

We have not previously addressed whether the donning and doffing of police uniforms and gear at home are compensable under the FLSA, or ruled on the impact of the 2006 DOL

---

[6]Our recent decision in *Rutti v. Lojack Corp., Inc.*, No. 07-56599, ___ F.3d ___, 2010 WL 699946 (9th Cir. Mar. 2, 2010), does not persuade us that compensation is appropriate in the context of this case. In *Rutti*, we determined that the employee was entitled to compensation for tasks performed at-home pursuant to the employer's requirement. *See id.* at *9. The facts we now consider are not analogous, as it is undisputed that, with the exception of motorcycle officers, the officers are free to don and doff at home or at work. No requirement either way is imposed by the City.

[7]The officers maintain that the DOL memorandum is limited to an analysis of the continuous workday rule. Under the continuous workday rule, "the workday is generally defined as the period between the commencement and completion on the same workday of an employee's principal activity or activities." *IBP*, 546 U.S. at 29 (citation omitted). However, the DOL expressly considered in the memorandum the compensability of donning and doffing when employees have the option and ability to conduct these activities at home.

memorandum. Finding the DOL memorandum persuasive, several district courts have held that such activities are not compensable. In *Martin v. City of Richmond*, 504 F. Supp. 2d 766, 773-74 (N.D.Cal. 2007), the district court determined that the police uniform was not indispensable to the officers' principal activities, but that the officers' equipment was indispensable to their principal activities. Nonetheless, the district court held that "the donning and doffing of protective gear at home typically renders that activity non-compensable under the FLSA." *Id.* at 775; *see also Dager v. City of Phoenix*, 2009 WL 531864, at *11 (D. Ariz. Jan. 21, 2009) (same); *Abbe v. City of San Diego*, 2007 WL 4146696, at *7 (S.D. Cal. Nov. 9, 2007) (same as to uniforms); *but see Lemmon v. City of San Leandro*, 538 F. Supp. 2d 1200, 1207-09 (N.D.Cal. 2007) (determining that the donning and doffing of uniforms and gear were compensable activities).[8]

We are persuaded that the district court's analysis in *Abbe* faithfully applied the precepts set forth in *Steiner* and *Alvarez*. The district court stated:

---

[8]Other courts have concluded that the donning of uniforms is compensable when the employees do not have the option to don them at home. *See, e.g.*, *Perez v. Mountaire Farms, Inc.*, 610 F. Supp. 2d 499, 519 (D. Md. 2009) (holding that the donning and doffing of gear was compensable, despite a take-home option, because the employees were "required by law, policy, and the nature of the work to don and doff their [gear] at work."); *Lee v. Am-Pro Protective Agency, Inc.*, 860 F. Supp. 325, 326 (E.D. Va. 1994) (finding donning of uniform compensable where "Plaintiffs seek compensation for the time that it takes them to change into and out of their guard uniforms, on site, because they are not allowed to change at home and arrive at work already in uniform."); *cf. Bagrowski v. Maryland Port Auth.*, 845 F. Supp. 1116, 1121 n.6 (D. Md. 1994) ("The only substantial pre-roll call activity in which the non-supervisory plaintiffs allegedly engaged was putting on their uniforms. Many officers came to work in their uniforms and nothing prevented plaintiffs from doing so. Clearly, dressing at work was not an integral part of their activity as were the clothes-changing and showering habits of the workers routinely exposed to hazardous chemicals at a chemical manufacturing plant who were the plaintiffs in [*Steiner*].") (internal quotation marks omitted).

> It is important to note . . . that the relevant inquiry is not whether the uniform *itself* or the safety gear *itself* is indispensable to the job — they most certainly are — but rather, the relevant inquiry is whether the nature of the work requires the donning and doffing *process* to be done on the employer's premises . . .

*Abbe*, 2007 WL 4146696, at *7 (emphases in the original).

We are similarly persuaded that the 2006 DOL memorandum regarding the compensability of the donning and doffing of uniform and gear at home is consistent with our analysis in *Alvarez*, and should be considered in our resolution of this case. "An agency's rules are entitled to two possible levels of deference. Generally, *Chevron*[9] deference is reserved for legislative rules that an agency issues within the ambit of the authority entrusted to it by Congress." *Tablada v. Thomas*, 533 F.3d 800, 806 (9th Cir. 2008) (citation omitted). "Such rules are characteristically promulgated only after notice and comment." *Id.* (citation omitted). "If, on the other hand, the agency rule or decision is not within an area of express delegation of authority or does not purport to have the force of law, it is entitled to a measure of deference proportional to its power to persuade, in accordance with the principles set forth in *Skidmore v. Swift & Co.*, 323 U.S. 134, (1944)." *Id.* (citation omitted). "Under this level of review, we look to the process the agency used to arrive at its decision." *Id.* (citations omitted). "Among the factors we consider are the interpretation's thoroughness, rational validity, consistency with prior and subsequent pronouncements, the logic and expertness of an agency decision, the care used in reaching the decision, as well as the formality of the process used." *Id.* (citation, alterations, and internal quotation marks omitted).[10]

---

[9]*Chevron U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837 (1984).

[10]The dissent criticizes the majority for giving *Skidmore* deference to the DOL's interpretations of the Portal-to-Portal Act, *see Dissenting Opinion*, p. 4790, without in any way articulating why the DOL's interpretive documents lack the power to persuade.

**[7]** We conclude that the 2006 memorandum merits *Skidmore* deference,[11] as it provides a rational and consistent approach regarding the compensability of the donning and doffing of uniforms and related gear. In particular, the 2006 memorandum's focus on the location of the donning and doffing comports with the principles established in *Steiner*, *Alvarez*, and *Ballaris*. In each of these cases, the employees were *required* by their employers, by law, by rules, or by the nature of the work to don and doff their uniforms and gear at the employer's premises. *See Steiner*, 350 U.S. at 256; *Alvarez*, 339 F.3d at 903; *Ballaris*, 370 F.3d at 911. The 2006 memorandum consistently opines that employees are not entitled to compensation when they are not required by the employer to don and doff uniforms and gear at the employer's premises, and have the option and ability to don and doff at home. The 2006 memorandum, therefore, provides additional support for our determination of the non-compensability of at-home donning and doffing, an issue not addressed in *Steiner*, *Alvarez*, and *Ballaris*.

The DOL memorandum is also true to its prior interpretations of the FLSA and Portal-to-Portal Act. For example, 29 C.F.R. § 785.24(c) provides:

> Among the activities included as an integral part of a principal activity are those closely related activities which are indispensable to its performance. If an employee in a chemical plant, for example, cannot perform his principal activities without putting on certain clothes, changing clothes *on the employer's premises* at the beginning and end of the workday would be an integral part of the employee's principal activity . . .

---

[11]The 2006 memorandum is not entitled to *Chevron* deference because "[i]nterpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant *Chevron*-style deference." *Christensen*, 529 U.S. at 587 (citations omitted).

29 C.F.R. § 785.24(c) (emphasis added); *see also* 29 C.F.R. § 790.8(c) (providing the same example).

The DOL has regularly interpreted these regulations to require compensation when the donning and doffing of clothing is required at the employer's premises. In a September 11, 1968, opinion letter, the DOL advised that "if an employee cannot perform his principal activities without putting on certain clothes, changing clothes on the employer's premises at the beginning and end of the workday would be an integral part of the employee's principal activity and compensable . . ." Dep't of Labor, Opinion Letter No. 908 (Sept. 11, 1968). However, "employees who elect to dress at home before going to work are not working while dressing even though the uniform they put on at home is required to be worn in the place of their employment during working hours." *Id.*

In a January 28, 1974, opinion letter, the DOL reiterated that "clothes changing time must be counted as hours worked if it is required *by the rules of the employer*." Dep't of Labor, Opinion Letter No. WH-252, p. 1, 1974 WL 38691 (January 28, 1974) (emphasis in the original). The DOL opined that such activities were compensable where "the employer has ruled that all employees in the stated departments must be dressed in uniforms which they are not permitted to wear when leaving the premises, and that under company rules the employees must change clothes on the premises at the beginning and end of their work shifts." *Id.* p. 2.[12]

---

[12]The officers assert that the DOL's 2006 memorandum is inconsistent with the DOL's 2001 opinion letter interpreting section 3(o) of the FLSA. In that letter, the DOL explained that "[a]n employer must compensate its employees for any activity that is an integral and indispensable part of the employee's principal activities, including the putting on, taking off and cleaning of personal protective equipment, clothing or gear that is required by law, by rules of the employer or by the nature of the work." Dep't of Labor, Opinion Letter, 2001 WL 58864 (Jan. 15, 2001). Appellants maintain that, because this opinion letter does not mention the location of the donning and doffing of clothing, the DOL's 2006 memorandum is incon-

The DOL Field Operations Handbook also instructs that "[e]mployees who dress to go to work in the morning are not working while dressing even though the uniforms they put on at home are required to be used in the plant during working hours. Similarly, any changing which takes place at home at the end of the day would not be an integral part of the employees' employment and is not working time." DOL Field Operations Handbook, Ch. 31, § 31b13 (12/15/2000).[13,14]

_____

sistent. However, the fact that the DOL did not address a location requirement in the 2001 opinion letter does not negate the DOL interpretation regarding donning and doffing at home. *See* Dep't of Labor, Opinion Letter No. 908 (Sept. 11, 1968); *see also* Dep't of Labor, Opinion Letter No. WH-252, 1974 WL 38691 (January 28, 1974).

[13]Although the prior DOL interpretations involved the changing of clothes and did not include gear, this does not diminish the 2006 memorandum's persuasive effect. In *Alvarez*, we applied 29 C.F.R. § 790.8(c), which deals with the changing of clothes, to the donning and doffing of gear. *See Alvarez*, 339 F.3d at 903.

[14]The officers' contention that the DOL memorandum conflicts with 29 C.F.R. § 776.6 is unpersuasive. Section 776.6 provides that "[e]xcept for the general geographical limitations discussed in § 776.7, the Act contains no prescription as to the place where the employee must work in order to come within its coverage. It follows that employees otherwise coming within the terms of the Act are entitled to its benefits whether they perform their work at home, in the factory, or elsewhere. The specific provisions of the Act relative to regulation of homework serve to emphasize this fact." (footnote references omitted). The general statement that employees may be entitled to benefits for *work* performed at home does not contradict the DOL's more specific determination that the donning and doffing of gear at home are non-compensable as non-work preliminary or postliminary activities.

We also decline to accept the officers' argument premised on 29 C.F.R. § 553.221(b) ("Compensable hours of work generally include all of the time during which an employee is on duty on the employer's premises or at a prescribed workplace, as well as all other time during which the employee is suffered or permitted to work for the employer. Such time includes all pre-shift and post-shift activities which are an integral part of the employee's principal activity or which are closely related to the performance of the principal activity . . ."). This regulation in no way establishes that the donning and doffing of uniforms and gear are compensable activities. Rather, the regulation merely provides that once work activities are defined, the employee must be compensated for the performance of all those defined work activities.

**[8]** The 2006 memorandum's location consideration furthers the purposes undergirding the Portal-to-Portal Act, as reflected in the extensive findings articulated in 29 U.S.C. § 251:

The Congress finds that the Fair Labor Standards Act of 1938, as amended [29 U.S.C.A. § 201 et seq.], has been interpreted judicially in disregard of long-established customs, practices, and contracts between employers and employees, thereby creating wholly unexpected liabilities, immense in amount and retroactive in operation, upon employers with the results that, if said Act as so interpreted or claims arising under such interpretations were permitted to stand, (1) the payment of such liabilities would bring about financial ruin of many employers and seriously impair the capital resources of many others, thereby resulting in the reduction of industrial operations, halting of expansion and development, curtailing employment, and the earning power of employees; (2) the credit of many employers would be seriously impaired; (3) there would be created both an extended and continuous uncertainty on the part of industry, both employer and employee, as to the financial condition of productive establishments and a gross inequality of competitive conditions between employers and between industries; (4) employees would receive windfall payments, including liquidated damages, of sums for activities performed by them without any expectation of reward beyond that included in their agreed rates of pay; (5) there would occur the promotion of increasing demands for payment to employees for engaging in activities no compensation for which had been contemplated by either the employer or employee at the time they were engaged in; (6) voluntary collective bargaining would be interfered with and industrial disputes between employees and employers and

between employees and employees would be created; (7) the courts of the country would be burdened with excessive and needless litigation and champertous practices would be encouraged; (8) the Public Treasury would be deprived of large sums of revenues and public finances would be seriously deranged by claims against the Public Treasury for refunds of taxes already paid; (9) the cost to the Government of goods and services heretofore and hereafter purchased by its various departments and agencies would be unreasonably increased and the Public Treasury would be seriously affected by consequent increased cost of war contracts; and (10) serious and adverse effects upon the revenues of Federal, State, and local governments would occur.

29 U.S.C. § 251(a).[15] A location consideration also supports Congressional goals by clarifying the circumstances under which employees must be compensated for the donning and doffing of uniforms and gear, thereby preventing unexpected and substantial liability to employers. Consistent with these principles, we conclude that donning and doffing of police uniforms and gear are not compensable under the contextually-specific facts of this case.[16] We agree with the

---

[15]Discussion of these findings is conspicuously absent from the dissenting opinion.

[16]Contrary to the officers' assertion, the 2006 DOL memorandum does not "open a considerable loophole in the FLSA" by treating at-home donning and doffing as non-compensable. The memorandum does not provide that at-home *work* is non-compensable. Instead, it narrowly focuses on the donning and doffing of gear where the "employees have the option and the *ability* to change into the required gear at home . . ." 2006 memorandum at 3 (emphasis added). Employees, therefore, must have the ability to don and doff their gear at home, not just the option. Appellants' hypothetical regarding a detective not being compensated for making investigatory calls and conducting case research at home is, therefore, unpersuasive, particularly as these do not generally meet the description of preliminary or postliminary activities. *See* 29 U.S.C. § 254(a) (describing preliminary and postliminary activities as acts other than "the principal activity or activities which such employee is employed to perform.").

district court that it is undisputed in the record that officers other than motorcycle officers retain the complete option and ability to don and doff their uniforms and gear at home. There is no rule, regulation, policy or practice of the City that limits the officers' option in any way. Although logical reasons exist for the police officers not to avail themselves of the at-home option, such as comfort, safety concerns, and exposure of family members to certain substances, these reasons reflect preferences rather than mandates. In sum, donning and doffing of uniforms and related gear are not required by law, rule, the employer or the nature of the police officers' work to be performed at the employer's premises.

Our analysis is consistent with the reasoning employed by the court in *Haight v. Wackenhut Corp.*, No. 03 Civ. 9870 (SCR), ___ F. Supp. 2d ___, 2010 WL 769539 (S.D.N.Y. Mar. 2, 2010). In *Haight*, security officers sought compensation for the time spent donning and doffing hardhats, safety glasses, steel-toed boots, and gun holsters. *See id.* at *5. Although an argument could certainly be made that this protective gear enabled the security officers to better perform their assigned tasks, the district court nevertheless concluded that the donning and doffing of the protective gear was not integral to the principal work activities performed by the security officers. *See id.* The court found "[m]ost significant[ ]" the fact that the security officers were "not required to change on [the] employer's premises and have the option of changing at home." *Id.* at *6 (citation omitted).

The district court expressly relied on the Second Circuit's decision in *Gorman v. Consolidated Edison Corp.*, 488 F.3d 586 (2d Cir. 2007) to conclude that the equipment at issue was "generic protective gear" that was "non-integral and non-compensable under [the] FLSA." *Haight*, 2010 WL 769539, at *5 (citation omitted). In turn, the Second Circuit looked to *Steiner*, *Mitchell*, and *Alvarez* for guidance. *See Gorman*, 488 F.3d at 590-91. The Second Circuit recognized that only activities "that are integral *and* indispensable to principal

activities are compensable under the FLSA . . ." *Id.* at 590 (citation and internal quotation marks omitted) (emphasis added). The Second Circuit astutely recognized that there is a difference between an indispensable activity and an integral activity. That an activity is indispensable does not necessarily mean that the activity is integral to the principal work performed. *See id.* at 592-93. While expanding on the distinction, the Second Circuit explicitly noted the narrow interpretation "invite[d]" by *Steiner*. *Id.* at 593. The Second Circuit reasoned that "*Steiner* therefore supports the [narrow] view that when work is done in a lethal atmosphere, the measures that allow entry and immersion into the destructive element may be integral to all work done there . . ." *Id.* The Second Circuit contrasted the equipment at issue in *Steiner* with the gear donned and doffed by the employees of a nuclear power plant, emphasizing that although the helmet, safety glasses and steel-toed boots might "be indispensable to plaintiffs' principal activities[,]" they were not necessarily integral to those principal activities. *Id.* at 594.

The Second Circuit observed that "[t]he donning and doffing of such generic protective gear was not different in kind from changing clothes and showering under normal conditions, which, under *Steiner*, are not covered by the FLSA." *Id.* (citation and internal quotation marks omitted).[17]

To the extent *Haight* and *Gorman* imply that generic protective gear is never compensable, we do not adopt this conclusion. *See Alvarez*, 339 F.3d at 903 (observing that certain non-unique protective gear may be integral and indispensable). However, as with *Alvarez*, *Haight* and *Gorman* exemplify that the compensability analysis is "context-specific."

---

[17]The Second Circuit also stated that "[t]he donning and doffing of generic protective gear is not rendered integral by being required by the employer or by government regulation." *Id.* (citations omitted). We do not adopt this premise. Rather, as recognized in *Alvarez*, *see* 339 F.3d at 903, that is one factor to be considered in the compensability determination.

*Alvarez*, 339 F.3d at 902. The dissent disregards this requirement and automatically assumes that the donning and doffing of protective gear are compensable. *See Dissenting Opinion*, pp. 4794-96. This assumption, without regard to the options available to the police officers, contravenes our precedent and creates needless intercircuit tension.

## IV.   CONCLUSION

[9] We readily acknowledge and applaud the many law enforcement officers throughout this Circuit who put their lives on the line daily to ensure the continued safety of our communities. Our ruling in no way should be interpreted as denigrating the vital role these officers fill in the rubric of society. Nevertheless, our analysis of the governing statutes, as informed by the DOL interpretation, our precedent, and other analogous cases; leads us to the conclusion that the donning and doffing of police uniforms and related gear are not compensable activities in this case. No requirement of law, rule, the employer, or the nature of the work mandates donning and doffing at the employer's premises, and none of the other factors articulated in *Alvarez* weigh in favor of a conclusion of compensability. No material issue of fact was raised on the record of this case that donning and doffing of police uniforms and related gear are compensable work activities under the FLSA, as amended by the Portal-to-Portal Act. The district court, therefore, properly granted summary judgment in favor of the City.

**AFFIRMED.**

---

GOULD, Circuit Judge, concurring in the judgment in part and dissenting in part:

I would not announce a bright-line location rule that controls the compensability of preliminary and postliminary

activities under the FLSA. The location where an activity is performed is just one of many useful tools in the fact-sensitive compensability analysis. Location is not in and of itself the controlling test. Because I disagree with the majority's approach and its holding with respect to job-related protective gear, I concur in the judgment only with respect to the majority's determination that the donning and doffing of police uniforms is non-compensable. I would hold that the donning and doffing of protective gear is compensable, subject to a *de minimis* analysis on remand. Thus I respectfully dissent in part.

**I**

The majority creates a bright-line rule that donning and doffing uniforms and protective gear is integral and indispensable to police work, and thus compensable under the FLSA, only if a "requirement of law, rule, the employer, or the nature of the work mandates donning and doffing at the employer's premises." Op. at 4786. This new rule is contrary to the Supreme Court's context-specific approach to determining compensability. Even absent that conflict, I doubt that the new rule will do much to clarify the law governing when the donning and doffing of police uniforms and gear is compensable.

**A**

First, "[t]he Supreme Court's approach to this principal, integral and indispensable duty question is context-specific." *Alvarez v. IBP, Inc.*, 339 F.3d 894, 902 (9th Cir. 2003) (internal quotation marks omitted)*, aff'd*, 546 U.S. 21, 32 (2005) (citing with approval our "context specific" description of the compensability determination). *Steiner* and *Mitchell*, the two Supreme Court cases illustrating the proper approach for determining compensability under the Portal-to-Portal Act, examined more than a dozen factors between the two cases in determining compensability. In *Steiner*, the Court concluded

that changing clothes and showering were compensable activities performed by battery-plant employees in *Steiner* after looking to industrial standards, state-law requirements, insurance-carrier requirements, operational-efficiency considerations, who provided the work clothes, the location and timing of clothes changing and showering, the absence of a written policy governing clothes changing and showering, the testimony of the plant foreman that an unwritten policy required post-shift bathing, and the exception to the bathing policy for an injured worker who did not use the common showers. *Steiner v. Mitchell*, 350 U.S. 247, 250-51 & n.1 (1956). In *Mitchell*, the companion case to *Steiner*, the Court determined that butchers' time sharpening knives and saws was compensable after looking at who furnished the knives and sharpening tools, the importance of sharp knives to butchering, when and where the sharpening was done, and how many knives were sharpened per day. *Mitchell v. King Packing Co.*, 350 U.S. 260, 261-62 (1956). Although the location of the clothes changing and knife sharpening formed part of the analysis in both *Steiner* and *Mitchell*, location did not dominate or control the inquiry.[1]

---

[1]In *Mitchell*, the meat-packing plant housed a room with an emery wheel and grindstone where the knifemen sharpened their tools. 350 U.S. at 262. Because of the centrality of knife sharpening to butchering, it seems unlikely that the Court would have concluded that sharpening was not compensable if the knifemen had enjoyed the option to do this task either at home or at the plant. Either way, the knifemen had to sharpen their knives and saws to properly perform their jobs, so the task would presumably have been compensable. *See id.*

The facts here are analogous. Regardless of the location where donning and doffing takes place, police officers perform the same series of steps to ready their uniforms and gear. Under the majority's new rule, any police department that mandates that its officers don and doff their uniforms and gear at the precinct must pay for that time, while those departments that make the donning and doffing location optional face no such requirement. Perhaps I missed something, but it seems quite strange that the exact same activity would be only sometimes compensable under the FLSA if we follow the majority's rule.

The two prior Ninth Circuit FLSA cases involving clothing and protective gear have emphasized the location where gear was donned and doffed, but both of those cases featured gear that was impractical or dangerous to remove from the plant. *See Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 903-04 (9th Cir. 2004) (discussing the full-body "bunny suit" that must be worn to prevent contamination from outside, ambient air); *Alvarez*, 339 F.3d at 898 n.2 (listing gear designed to repel blood and liquid associated with animal-carcass disassembly that must be cleaned after each shift). No such practical difficulty exists with respect to police uniforms and protective gear, and I would distinguish *Ballaris* and *Alvarez* as involving practical requirements of on-site donning and doffing that are not presented here.[2]

The majority conflates the requirement that a piece of clothing or gear be donned on-site with the importance that the piece of gear has for the job performed. *See* Op. at 4778 ("[T]he relevant inquiry is whether the nature of the work requires the donning and doffing *process* to be done on the employer's premises.") (alteration omitted) (citing *Abbe v. City of San Diego*, 2007 WL 4146696, at *7 (S.D. Cal. 2007)). This error perhaps arises because the nature of a particular piece of clothing or gear simultaneously determines (1) whether it can practically be donned and doffed off-site, and (2) whether wearing the gear is integral and indispensable to the work performed. Although related, the two inquiries

---

[2]The majority is concerned that I discuss the practical difficulty of donning and doffing off-site even though it was not explicitly addressed in the *Ballaris* and *Alvarez* cases. Op. at 4774. The majority's assumption that the collection of factors that may properly be considered in the compensability analysis was closed after *Ballaris* and *Alvarez* highlights the incorrect view it takes of the compensability inquiry. It is appropriate to consider every fact relevant to donning and doffing police uniforms and gear, and to evaluate those total circumstances under the previously established law. But the majority in substance has artificially narrowed the inquiry to one factor: location. In so doing, the majority eschews *Alvarez*'s context-specific approach.

should remain distinct. While *Ballaris* and *Alvarez* may suggest that on-site donning will usually be sufficient to trigger compensability under the FLSA, on-site donning is not necessary to make work-related activity, like putting on protective gear, compensable. Rather, the only necessary conditions remain those set out by the Supreme Court in *Steiner*: donning the clothing or gear must be an "integral and indispensable part of the principal activities for which [the officers] are employed." 350 U.S. at 256. It is how the piece of equipment is used, not just where it is donned or doffed, that makes donning and doffing integral and indispensable.

The majority says that it is not announcing a bright-line location condition for donning and doffing to be compensable. But we must evaluate the likely interpretive effects of its rationale. First, it adopts the Department of Labor's "focus on the location of donning and doffing." Op. at 4779. Second, in parting ways with *Steiner*, *Alvarez*, and *Ballaris*—cases that compensated donning and doffing—the majority does not reason that donning and doffing were "integral and indispensable" there but not here, as Supreme Court precedent requires. *See Steiner*, 350 U.S. at 256. Instead, the majority asks whether "*on-premises* donning and doffing" were required in *Steiner*, *Alvarez*, and *Ballaris*. Op. 4774 (emphasis added). By limiting the discussion of *Steiner*, *Alvarez*, and *Ballaris* to the "on-premises" changing requirement, the majority narrows a many-factored test into a one-fact inquiry. Only by transforming on-premises donning and doffing into the signal fact of those cases can the majority assert that the facts in this appeal are "diametrically opposed" to *Steiner*, *Alvarez*, and *Ballaris*. *See* Op. at 4773. The final point demonstrating that the opinion in effect creates a bright-line rule jumps out from the majority's conclusion, which holds that donning and doffing is not compensable "where no requirement . . . mandates donning and doffing *at the employer's premises*." Op. at 4786 (emphasis added).

In short, whether the majority is cognizant of it or not, its reasoning in substance imposes a location prerequisite before

donning and doffing can be compensable. In making mere location such a salient and dispositive factor, the majority errs. I do not believe the Supreme Court's context-specific FLSA jurisprudence reasonably supports the imposition of a location requirement for donning and doffing that does not apply to other work activities. The location where the activity is performed should inform, but not control, our inquiry. I would continue to use location as one of many ingredients in the compensability determination but would not make it dispositive in a subset of FLSA cases.

**B**

The second problem I see with the bright-line location requirement is that it will not effectively create the bright line that the majority seeks. The majority adopts the position taken by the Department of Labor in a 2006 Advisory Memorandum written to Department staff.[3] That memorandum states that "[i]t is our longstanding position that if employees have the option and ability to change into the required gear at home, changing into that gear is not a principal activity, even when it takes place at the plant." Dep't of Labor, Wage & Hour Adv. Mem. No. 2006-2 (May 31, 2006).

The language about the "option and ability" to change at home gives rise to the argument that donning and doffing is compensable where employees do not have the true ability to perform the tasks at home. This argument—that a *de facto* requirement forces the employee to don and doff on-site—has been repeatedly advanced by police officers in our circuit, often in response to the employer's invocation of the 2006 Advisory Memorandum. *See, e.g.*, *Valladon v. City of Oak-*

---

[3]Neither the 2006 Advisory Memorandum nor the Department's Statements of General Policy regarding the Portal-to-Portal Act carry the force of law because they are not the product of formal adjudication or notice-and-comment rulemaking. *See* 29 C.F.R. § 790.1(b)-(c); *Christensen v. Harris County*, 529 U.S. 576, 587 (2000).

*land*, 2009 WL 3401263, at *9-10 (N.D. Cal. 2009) (denying city's motion for summary judgment because sufficient evidence supported a *de facto* policy requiring officers to don and doff on-site); *Dager v. City of Phoenix*, 646 F. Supp. 2d 1085, 1100 (D. Ariz. 2009) (finding that option to don and doff at home was not "illusory" because twenty-nine officers changed completely or partially at home); *Maciel v. City of Los Angeles*, 569 F. Supp. 2d 1038, 1049 (C.D. Cal. 2008) (finding that "[f]or all practical purposes, the equipment must be donned and doffed at the assigned station"); *Lemmon v. City of San Leandro*, 538 F. Supp. 2d 1200, 1206 (N.D. Cal. 2007) (finding "strong indicia that the donning and doffing of the uniform at the police station is a *de facto* requirement"); *Martin v. City of Richmond*, 504 F. Supp. 2d 766, 776 (N.D. Cal. 2007) (finding genuine issue of material fact as to whether the nature of police work permits off-site donning and doffing). Indeed, the allegation of a *de facto* policy requiring on-site donning and doffing was raised in this very case. *Bamonte v. City of Mesa*, 2008 WL 1746168, at *6 (D. Ariz. 2008). The majority opinion endorses this argument by explaining that employees "must have the ability to don and doff their gear at home, not just the option." Op. at 4783 n.16.

Rather than clarifying whether donning and doffing of police uniforms and gear is compensable, the majority's approach will just change the terms of the debate. Employees will now focus their energies on showing either that (1) their employer maintains a *de facto* policy requiring on-site donning and doffing, or (2) that the nature of their work requires it. The bright-line location requirement will do little to resolve the issue of when police officers must be compensated for donning and doffing their uniforms and gear. While straying from the Supreme Court's context-specific principles, the majority's approach will in effect provide little actual guidance.

## II

Applying a context-specific approach to the Mesa officers' claims, I agree with the majority that the time officers spend

donning and doffing their uniforms is not compensable. I would hold, however, that the time spent donning and doffing the protective gear is compensable, subject to a *de minimis* analysis.

## A

Where uniforms are concerned, we start with the baseline understanding that changing clothes under "normal conditions" is a non-compensable preliminary or postliminary activity under the Portal-to-Portal Act. *Steiner*, 350 U.S. at 249. For clothes changing to become compensable in this case, it must be integral and indispensable to policing, meaning that it is necessary to the principal policing activities and done for the benefit of the employer. *See Alvarez*, 339 F.3d at 902-03.

In the cases where donning and doffing a "uniform" has been found compensable *Steiner* and *Ballaris*—the uniform performed a job-related function other than merely identifying the wearer with a particular occupation. In *Steiner*, the "old but clean work clothes" provided by the employer and worn by the employees helped protect workers from lead oxide poisoning. 350 U.S. at 250-51. Clothes changing also helped the employees avoid injury related to severe sulphuric acid burns. *Id*. at 250. In *Ballaris*, some employees were required to wear a uniform consisting of a polo shirt, pants, and shoes under their protective bunny suit. 370 F.3d at 903-04. The uniform, according to the employee manual, was necessary for many reasons, including to "limit potential cleanroom contamination from the clothing worn under the cleanroom suits." *Id*. at 904. The uniform aided the manufacture of silicon wafers by limiting air-borne impurities introduced through street clothes. *Id*. at 903. In both *Steiner* and *Ballaris*, it was the functional role of the uniform, not the fact that it identified the employee, that triggered compensability.

The Mesa officers' uniforms identify them as police officers, and they argue that this creates a "command presence"

that is necessary to their work in arresting suspects or quieting volatile situations. Yes, the uniform connotes authority, but the long-sleeved shirt, tie, nametag, trousers, socks, and authorized footwear do not assist the officers in making arrests, interviewing witnesses, or writing reports—to name a few of their principal activities—any more than substitute clothing would. The ability of undercover officers, who wear no uniform, to effectively police illustrates the point. I agree with Judge Breyer's view:

> Aside from the authority they connote, [the articles of an officer's uniform] do not help catch suspects, and they do not protect officers from violence. Something more than the salutary effect of a uniform on those who recognize its cultural significance is necessary to make its donning and doffing "integral and indispensable" to an officer's "principal activities" of law enforcement. If the law were otherwise, *all* uniforms would entitle their wearers to compensation under the FLSA.

*Martin*, 504 F. Supp. 2d at 774. Because I conclude that the officers' uniforms are not necessary to the principal work of policing, I concur in the portion of the judgment holding that the time spent donning and doffing the uniforms is not compensable.

**B**

The analysis with respect to the protective gear is entirely different. The Mesa officers are required at all times to wear a duty belt, belt keepers, firearm and holster, magazine cases, handcuffs and case, CAP-STUN spray and holder, telescopic baton and holder, TASER with holder, and a portable radio with holder. A bullet-proof vest, helmet, and traffic vest must be available to the officers at all times, and the donning of these items is mandatory in certain circumstances, such as when the officer executes a search warrant or directs traffic.

The officers are also required to have leg and arm restraints and a flashlight available at all times while on shift. The City of Mesa issues most of this gear and reimburses officers for the purchase of their bullet-proof vests. These tools, which are always worn or available during the shift, are "job-related protective gear." *See Alvarez*, 339 F.3d at 903.

The police protective gear is similar to the sanitary aprons, liquid-repelling sleeves, metal-mesh gear, and Kevlar gloves at issue in *Alvarez*. The meat-processing employees were required to don and doff the protective gear "at various intervals throughout the workday." *Id*. Because the *Alvarez* employees were required by law, employer policy, and the nature of the work to don and use the protective gear, that gear was "necessary to the principal work performed." *Id*. Finally, donning and doffing the job-related protective gear was done for the benefit of the employer, because the gear helped the employer satisfy legal requirements, prevent contamination, and avoid workplace injury. *Id*.

Analogizing the protective gear worn by police to the gear in *Alvarez*, I conclude that the time spent donning and doffing the police protective gear is integral and indispensable. The gear is necessary to making arrests and protecting the public from injury, two of the principal activities performed by the Mesa officers. More specifically, officers use the flashlight to locate suspects and evidence, and use the portable radio to call for backup. The firearm, baton, CAP-STUN spray, handcuffs, and TASER all help the officers restrain and subdue suspects and protect the officers and members of the public from dangerous persons. The helmet, traffic vest, and bullet-proof vest further protect the officers' safety while they engage in dangerous principal activities. This gear is indispensable to the task of policing, and the flexibility surrounding where the gear may be donned and doffed cannot singlehandedly alter that fact.

Donning and doffing the protective gear is also done for the benefit of the employer, one of the main considerations in

determining compensability. *Alvarez*, 339 F.3d at 902. Gear that prevents unnecessary workplace injury is donned for the employer's benefit. *Id*. at 903. The protective gear helps officers avoid injury or death during violent situations. Likewise, officers use their protective gear to help keep the public safe while on the roads or when threatened with violence. The gear serves the dual function of protecting the officers and protecting the public, and it is therefore donned for the benefit of the City of Mesa. Having determined that the job-related protective gear is necessary to the principal work performed and donned for the benefit of the employer, I would hold that donning and doffing of this gear is integral and indispensable to the principal policing activities. *See id.; Ballaris*, 370 F.3d at 910-11.

The last step in the compensability analysis is a determination of whether an otherwise-compensable activity is not compensable because the time required to complete it is *de minimis*. Op. at 4771; *see also Alvarez*, 339 F.3d at 903 (citing *Lindow v. United States*, 738 F.2d 1057, 1061-62 (9th Cir. 1984)). The Supreme Court has said that the FLSA does not compensate "a few seconds or minutes of work beyond the scheduled working hours." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946). We have said that "periods of approximately 10 minutes" are often considered *de minimis*. *Lindow*, 738 F.2d at 1062 (citing cases finding periods between two and fifteen minutes *de minimis*). I might imagine that the time it takes to put on and take off a belt and vest runs only in seconds, or a few minutes, and is not compensable under the *de minimis* test, but, given the district court's approach, the parties did not make a record on the *de minimis* issue.[4] So, on my theory of the case, a remand would be nec-

---

[4]Even if the time to put on and take off the protective gear is not *de minimis* and is compensable under the FLSA, the officers' commute time would not thereby be rendered compensable. Commute time is specifically excluded from FLSA compensability. 29 U.S.C. § 254(a)(1); 29 C.F.R. § 785.16. That is true even where some at-home activities following the

essary for an evidentiary hearing to determine whether the time spent to don and doff the protective gear is *de minimis*.

## III

I disagree with the location-based bright-line rule created by the majority, prompting me respectfully to dissent.[5] I would instead conclude that the donning and doffing of police protective gear is compensable unless the time involved is *de minimis*. I concur in the judgment to the extent that it holds that the donning and doffing of the police uniform is not compensable.

---

commute are compensable. *See Rutti v. LoJack Corp.*, No. 07-56599, slip op. 3247-3258 (9th Cir. Mar. 2, 2010) (holding that data transmissions performed at home are an integral and indispensable part of the principal job activity, but nonetheless holding that the off-the-clock activity did not extend the workday or render commute time compensable).

[5]Although I ground my disagreement on a different view from the majority about the Supreme Court's controlling precedent, I also have grave pragmatic reservations about the consequences of the majority's rule. It may be penny wise but pound foolish to save the expense of compensating for protective gear donned at home. This is only an illusory saving if the work was *de minimis* in any event. Worse, to the extent that the majority's holding may deter some police from using protective gear, there may be increased injuries or even lives lost. Consider that officers might intervene to address problems threatening public safety while they are en route to work, and if so dangers increase absent protective gear. That the majority labels this possibility "hyperbole" does not resolve my concern.